[No. S021074. May 7, 1992.]

JERI EMMET LAIRD, Plaintiff and Respondent, v.
SIDNEY G. BLACKER, as Administrator, etc., et al., Defendants and
Appellants.

**COUNSEL**

Horvitz & Levy, Ellis J. Horvitz, David S. Ettinger and Federic D. Cohen for Defendants and Appellants.

Francis C. Pizzulli and Charlotte E. Costan for Plaintiff and Respondent.

King & Seligsohn and Stephen Scott King as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**LUCAS, C. J.**—We granted review to determine whether the one-year statute of limitations for attorney malpractice actions under Code of Civil Procedure section 340.6, subdivision (a) (all further statutory references are to this code unless otherwise stated) is tolled during the time the client appeals from the underlying judgment on which the claim of malpractice is based.

Section 340.6 provides that the statute of limitations for legal malpractice commences when the client discovers, or should have discovered, the cause of action. The period is tolled during the times, inter alia, (i) the client "has not sustained actual injury," (ii) the negligent attorney continues to represent the client, (iii) the attorney willfully conceals facts constituting the negligence, or (iv) the plaintiff is under a disability that "restricts the plaintiff's ability to commence legal action."[1] The question before us is: what constitutes "actual injury"—the judgment against plaintiff, or the finality of the appeal therefrom?

We conclude the limitations period of section 340.6 commences when a client suffers an adverse judgment or order of dismissal in the underlying action on which the malpractice action is based. As explained below, our holding conforms to legislative intent, and adopts the present majority view as explained in the most recent cases interpreting the statute at issue here and similar statutes in other states.

## I. BACKGROUND

Plaintiff, a television writer, retained the law firm of Berg & Spire to prosecute a lawsuit against Spelling-Goldberg, a television production company. She alleged that Spelling-Goldberg based its television series "Family" on a script she had submitted, but failed to acknowledge or credit her contribution. After serving the complaint, Berg & Spire failed to pursue the

---

[1]Section 340.6 in its entirety provides:

"(a)  An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:

"(1)  The plaintiff has not sustained actual injury;

"(2)  The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred;

"(3)  The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation; and

"(4)  The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action.

"(b)  In an action based upon an instrument in writing, the effective date of which depends upon some act or event of the future, the period of limitations provided for by this section shall commence to run upon the occurrence of such act or event."

matter, and plaintiff retained attorney Barry Post and the law offices of Samuel Z. Winnikoff (hereafter defendants) to prosecute the same suit.[2]

On October 20, 1981, the suit was dismissed for lack of prosecution. (§ 583.410.) On December 7, 1981, plaintiff discharged defendants and filed a notice of appeal in propria persona because she could not afford legal fees for the appeal. On September 15, 1982, she voluntarily dismissed her appeal after settling with Spelling-Goldberg for $1,000. On May 17, 1983, 19 months after her action against Spelling-Goldberg was dismissed and 17 months after Post and Winnikoff were discharged, but only 8 months after she voluntarily dismissed her appeal, plaintiff filed the present malpractice action against Berg & Spire and Barry Post. In February 1986, she amended her complaint to add Sidney G. Blacker and Samuel Z. Winnikoff, also known as Associates.

Plaintiff settled with Berg & Spire for $50,000 and proceeded to trial against defendants. Defendants moved for a nonsuit, asserting the one-year limitation period of section 340.6, subdivision (a) began running when plaintiff's suit against Spelling-Goldberg was dismissed, regardless of her ensuing appeal.[3] Plaintiff asserted her cause of action for legal malpractice did not accrue until she dismissed her appeal on September 15, 1982. Defendants' motion was denied, and the jury awarded plaintiff approximately $1.7 million in damages. Defendants' motion for a judgment notwithstanding the verdict was denied. Defendants appealed.

The Court of Appeal reversed and remanded with directions to enter judgment in favor of defendants. It held that under section 340.6, subdivision (a), plaintiff sustained actual injury on December 7, 1981, when she discharged her attorneys after her case was dismissed and judgment was entered against her. Plaintiff appeals that decision, and asks this court to hold the limitations period was tolled until her appeal of right was resolved. We affirm the Court of Appeal decision.

## II. DISCUSSION

### 1. *Background*

Prior to 1977, the statute of limitations for legal malpractice actions was governed by section 339, subdivision 1, which provides a two-year limitations period for any action based on "a contract, obligation or liability not

---

[2]Defendant Sidney G. Blacker represents the estate of Samuel Winnikoff. Plaintiff sued Blacker as administrator of Winnikoff's law firm.

[3]As noted above, a separate provision tolls the limitation period until the attorney accused of malpractice no longer represents the plaintiff in the underlying action. (§ 340.6, subd. (a)(2).) Defendants agree that the earliest date the statute could have begun running was December 7, 1981, after plaintiff's suit was dismissed and she discharged them.

founded upon an instrument in writing . . . ." Although section 339, subdivision 1, did not establish an accrual date for legal malpractice actions, courts generally adopted, as the date of accrual, the date on which the malpractice *occurred.* (*Hays* v. *Ewing* (1886) 70 Cal. 127 [11 P. 602] [cause of action for attorney malpractice barred at expiration of two years after neglect occurred].) Recognizing the harshness of a strict occurrence rule, later cases held that a cause of action for legal malpractice accrued when a plaintiff suffered "irremediable damage." (See, e.g., *Heyer* v. *Flaig* (1969) 70 Cal.2d 223, 230 [74 Cal.Rptr. 225, 449 P.2d 161] [statute of limitations for legal malpractice begins to run on date attorney performs last negligent act].) Finally, when the Legislature adopted section 340.6 in 1977, it implicitly rejected the term "irremediable damage" and codified the discovery rule of *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421] (hereafter *Neel*), and *Budd* v. *Nixen* (1971) 6 Cal.3d 195, 198 [98 Cal.Rptr. 849, 491 P.2d 433] (hereafter *Budd*). These cases hold that a cause of action for legal malpractice accrues when the client discovers or should discover the facts essential to the malpractice claim, and suffers appreciable and actual harm from the malpractice. Discovery of any appreciable and actual harm from the attorney's negligent conduct establishes a cause of action and begins the running of the limitations period. (*Budd, supra*, 6 Cal.3d at p. 201.)

Both *Budd, supra*, 6 Cal.3d 195, and *Neel, supra*, 6 Cal.3d 176, addressed the former two-year legal malpractice statute of limitations (§ 339), but did not specifically determine whether actual injury occurs when the client suffers an adverse judgment or after an appeal of right is concluded and the judgment is final. Rather, *Neel* and *Budd* suggested the time of discovery is often a question of fact for the jury. *Neel*, however, explained the holding in *Hays* v. *Ewing, supra*, 70 Cal. 127, which interpreted the limitations period of section 339 when the malpractice occurred in the course of litigation. *Neel* stated that the *Hays* court "accepted the date of dismissal of the suit—that is, the date upon which the client suffered damage—as the crucial point from which the statute of limitations should run. Indeed, the court refused to adopt as the critical time the date of the affirmance of the dismissal on appeal." (*Neel, supra*, 6 Cal.3d at p. 183.)

The *Budd* court further explained that, "Ordinarily, the client has already suffered damage when he discovers his attorney's negligence, as occurred in *Neel.* . . . In other cases, the infliction of the damage will alert the client to the attorney's negligence and thus the statute of limitations will then begin to run on any malpractice action. Only in the unusual case will the client discover his attorney's negligence without having suffered any consequential damage." (*Budd, supra*, 6 Cal.3d at p. 201.)

*Budd* also noted that, in general, a plaintiff suffers actual damage on entry of adverse judgment. Although the court commented that a losing defendant in the underlying action may suffer harm when he incurs monetary damages (attorneys fees, bond and court costs), this recognition of when monetary damage occurs was not the basis for the *Budd* decision. The court emphasized that the focus of the statute of limitations for legal malpractice should be on discovery of the *fact* of damage, not the amount. Indeed, the court observed that the cause of action may arise before the client sustains all or even the greater part of damage. (*Budd, supra,* 6 Cal.3d at pp. 200-201.)

Nonetheless, *Budd*'s reference to monetary damage has caused conflict in the courts. Taken at face value, the *Budd* language supports a conclusion that an appeal does not extend the period of limitations beyond adverse judgment. As the Court of Appeal herein observed, "Where, however, the malpractice occurs in the course of representing a plaintiff, there is no risk of execution and no need to post a bond. There may or may not be attorney's fees incurred, lost interest or other expenses."

This uncertainty over when damage occurs has led to conflict in the Courts of Appeal. Some courts rely on *Budd* to support application of the earlier "irremediable damage" rule that the Legislature rejected when it codified section 340.6. (See, e.g., *Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417, 434 [173 Cal.Rptr. 917] [actual damage occurs when plaintiff in underlying action incurs and pays attorney fees, legal costs and expenditures].)

By contrast, several recent cases hold that when the client is a losing plaintiff in the underlying action, an appeal of the dismissal of the action does not affect the date of actual harm under section 340.6 (i.e., adverse judgment and dismissal of the negligent attorney). For example, in *Troche* v. *Daley* (1990) 217 Cal.App.3d 403, 410 [266 Cal.Rptr. 34], Attorney Turney filed a lawsuit in the federal district court on behalf of his client, Troche, in May 1981. In August 1982, new counsel, Daley, was substituted for Turney. In May 1984, the action was dismissed for failure to timely serve a party. In June 1984, Daley filed a notice of appeal in the underlying action. In August 1984, Troche discharged Daley as her counsel on appeal, and in September 1984, Troche substituted Griffin as her attorney of record. In March 1985, the district court "denied Troche's request to appeal in forma pauperis because the court was unable to certify the appeal as not frivolous." (*Id.* at p. 406.) Two months later, Troche filed a legal malpractice action against Turney and Daley.

Thereafter, in October 1987, Turney moved for summary judgment asserting that section 340.6 barred the action. The trial court granted the motion

after finding that the cause of action arose in May 1984, when the district court dismissed the underlying action for failure to timely serve a party.

The Court of Appeal affirmed on the ground that as a matter of law, the latest time Troche had knowledge of the alleged malpractice was August 1984, when she discharged Daley as her counsel. The court concluded that the damage occurred in May 1984, when the district court dismissed the lawsuit, and that Troche's attempts to appeal the dismissal of the federal action did not toll the statute because it did not affect the date Troche suffered actual harm. (*Troche, supra,* 217 Cal.App.2d at p. 411.)

The court relied on *Budd, supra,* 6 Cal.3d at page 201, and *Neel, supra,* 6 Cal.3d at page 194, to hold that the client's discovery of the attorney's negligence, and his or her incurring damage from that negligence, marks the accrual of a cause of action for malpractice. (*Troche, supra,* 217 Cal.App.3d at pp. 410-411.) The *Troche* court observed that as in *Neel, supra,* and *Hays, supra,* 70 Cal. 127, a client suffers damage on the date the underlying action is dismissed, and that the conduct of a plaintiff in connection with subsequent proceedings seeking reversal of the dismissal on appeal does not affect the accrual of a cause of action under the statute. (*Troche, supra,* 217 Cal.App.3d at p. 411; see also *Neel, supra,* 6 Cal.3d at p. 183.)

The Court of Appeal below followed the *Troche* reasoning and observed that the "timeliness of a malpractice action should not turn on whether the client happened to be a plaintiff or defendant or happened to appeal . . . . To attempt to quantify damage or injury pending an appeal necessarily results in a distinction between plaintiffs and defendants and a contest about whether a particular expenditure is sufficient to trigger the limitations period." As the court observed, the Legislature used the term "actual" to focus on the *fact* that damage occurred, and eliminated all qualifiers to prevent confusion that would arise by requiring courts to consider the total amount of damages.

*Troche, supra,* 217 Cal.App.3d 403, has been followed in the most recent cases interpreting section 340.6. In *Turley v. Wooldridge* (1991) 230 Cal.App.3d 586, 593 [281 Cal.Rptr. 441], a malpractice plaintiff filed suit against her former attorney on the ground his negligence resulted in a marriage dissolution judgment that failed to accord her the full spousal support to which she was entitled. The Court of Appeal held the plaintiff's malpractice action accrued no later than the date of adverse judgment, and refused to toll the statute of limitations for six months after judgment was entered simply because the plaintiff had the right during that time to challenge the judgment under section 473.

Finally, in *Worton* v. *Worton* (1991) 234 Cal.App.3d 1638 [286 Cal.Rptr. 410], plaintiff wife sued her former husband for fraud and conversion, and her former attorney for legal malpractice, claiming that her former attorney negligently failed to discover excess assets hidden by her ex-husband. The court held the malpractice action was barred under section 340.6 because the wife's malpractice lawsuit was filed more than one year after entry of the dissolution judgment that failed to divide the excess assets.

Justice Lillie relied on *Budd, supra,* 6 Cal.3d 195, and *Troche, supra,* 217 Cal.App.3d 403, to hold that a "client sustains actual injury when, as a result of the attorney's negligence, a judgment is entered against the client." (*Worton, supra,* 234 Cal.App.3d at p. 1651.) The court rejected the wife's claim that the availability of an appeal should have tolled the limitations period, observing that the "availability of an appeal from a judgment in a civil action does not make 'remediable' the harm the client sustained upon entry of the judgment for purposes of tolling the statute of limitation for legal malpractice. [Citation.]" (*Id.* at pp. 1651-1652.) As the *Worton* court observed, tolling the statute during an appeal would place "the statute of limitations for legal malpractice . . . in the power of the client who could cause the statute to be tolled indefinitely" and, hence, thwart "the purpose of the statute of limitations which is 'to require "diligent prosecution of known claims thereby providing necessary finality and predictability in legal affairs, and ensuring that claims will be resolved while the evidence bearing on the issues is reasonably available and fresh." [Citations.]' " (*Id.* at p. 1652.)

The foregoing cases recognize that the focus of section 340.6 is on *discovery* of the malpractice and actual injury, not success on appeal or proof of the total amount of monetary damages suffered by the former client. For example, in order to prosecute a malpractice action, the former client as plaintiff must show a breach of the attorney's duty of care and that the breach caused the plaintiff harm. To establish this harm or damage, the client must prove that careful management of the underlying action would have resulted in a favorable judgment and the collection thereof, or, if the client were defending, that the proper handling of the case would have resulted in a defense verdict.

We disagree with plaintiff that actual injury should be defined in terms of monetary amount and that a successful appeal negates the client's ability to file a malpractice action. To the contrary, although appellate review may correct judicial error, and thus reduce the client's damages, an appeal does not necessarily exonerate the attorney, nor does it extinguish the client's action against him for negligence in the conduct of trial. (See also 2 Mallen & Smith, Legal Malpractice (3d ed. 1989) § 18.11, p. 111.)

Thus, even if the former client loses the underlying action because of the attorney's malpractice, success on appeal does not negate an action for legal malpractice. In essence, plaintiff asks us to ignore the fact that the focus of a legal malpractice action (when litigation is involved) is the attorney's *conduct* in the underlying case. As Mallen and Smith observe, when an appeal is taken from an adverse judgment, "an injury does not disappear or become suspended because a more final adjudication of the result is sought." (2 Mallen & Smith, *supra*, at p. 111.)

Under the foregoing authority, we hold that under section 340.6, the statute of limitations for legal malpractice actions commences on entry of adverse judgment or final order of dismissal. Plaintiff herein, therefore, sustained actual injury when the trial court dismissed her underlying action and she was compelled to incur legal costs and expenditures in pursuing an appeal. Her case also lost considerable settlement value and potential interest on any monetary award that would have been awarded absent the malpractice, once the action was dismissed.

Nonetheless, plaintiff asserts that she did not suffer actual injury until her appeal of right was dismissed. Until that point, plaintiff maintains, her damages were only speculative. She contends that several Court of Appeal cases support her assertion that the negligence caused by the malpractice must be "irremediable" before the statute of limitations under section 340.6 will begin to run. As noted above, plaintiff proposes a tolling rule that would extend commencement of the statute of limitations up to the point that an appeal of right is dismissed, without addressing whether accrual should be tolled until resolution of further discretionary review.

Her position is unpersuasive. Plaintiff confuses the distinction between the *fact and knowledge* of damage, and the *amount* of damage. (*Budd, supra,* 6 Cal.3d at pp. 200-201. As defendants observe, there are no California cases holding that a cause of action for legal malpractice is tolled on filing an appeal from the underlying judgment. Although there are several cases reasoning that a client must suffer "irremediable injury" before a claim for malpractice can be filed, as we explain, none holds that the statute of limitations is tolled simply because the client pursues an appeal.

For example, plaintiff relies on *Heyer* v. *Flaig, supra,* 70 Cal.2d 223, which holds that when an attorney is accused of malpractice in drafting a will for failing to follow the testamentary directives of a client, a cause of action for malpractice accrues on the date of the testatrix's death. Only then do the beneficiaries suffer "irremediable injury." (*Id.* at p. 225.) Our holding was based on the rationale that an attorney owes the beneficiaries a *continuing fiduciary duty* throughout the representation of the client.

Next, in *Bell* v. *Hummel* (1982) 136 Cal.App.3d 1009 [186 Cal.Rptr. 688], the defendant attorney was negligent in failing to assert a cause of action on his client's behalf against a doctor for medical malpractice. The client conceded that he discovered the malpractice more than a year before he filed his action against the attorney. He had hired new counsel who sought to avoid the statute of limitations bar by joining the client's malpractice claim with client's wife's claim for medical malpractice that was pending before the court. The court concluded that the client's actual injury, for purposes of section 340.6, occurred when the trial court denied his motion to amend the complaint to add his name. The court held: "[T]he impact and accrual of the damages [did not occur until] the new attorney failed in his attempt to rectify the previous mistake. . . . Until the court denied [husband] the right to join his wife's complaint as a coplaintiff in order to assert his claims arising from the alleged medical malpractice, his damage had not fully accrued. It was not until then that his claims were lost and the full impact of the wrongful acts settled leaving damage that was for all practical purposes irremediable." (*Bell* v. *Hummel, supra,* at pp. 1016-1017.) The court held that appreciable harm did not occur until the attorney's error became irremediable, a conclusion impliedly *rejected* by the Legislature when it adopted section 340.6.

In *Southland Mechanical Constructors Corp., supra,* 119 Cal.App.3d 417, the Court of Appeal accepted the defendant attorney's contention that the malpractice action filed against him accrued on the date the plaintiff's right to appeal from an adverse agency decision expired. The court rejected the plaintiff's contention that no injury resulted from the dismissal of the agency proceeding as long as tort litigation seeking identical relief was still pending. As the Court of Appeal herein observed, the *Southland* court assumed erroneously that the term "irremediable," as taken from the rule of *Heyer, supra,* 70 Cal.2d at page 230, must be read into the term "actual" in section 340.6, subdivision (a)(1).

In *Robinson* v. *McGinn* (1987) 195 Cal.App.3d 66 [240 Cal.Rptr. 423], a police officer was injured in the line of duty. He claimed his attorney's negligent representation in his personal injury claim caused him to lose his job and his disability pension. In the subsequent malpractice action, the court had to determine whether the statute of limitations accrued when he was denied reinstatement and pension benefits, or when the client lost his administrative appeal. The Court of Appeal held the statute was tolled until the city made its final administrative adjudication, reasoning that no irremediable harm had been suffered by the officer until the attorney's error could no longer be remedied.

*Turley* v. *Wooldridge, supra,* 230 Cal.App.3d 586, analyzed the *Bell* and *Robinson* decisions, and asserted that those cases simply misused the term

"irremediable." As the *Turley* court observed, "while the cases use the term 'irremediable,' they obviously do not mean absolutely irremediable." For example, "Bell's cause of action accrued when the trial court denied his motion to join his claim with his wife's, not when that decision was immune from challenge by way of motion for reconsideration or appeal. Finally, Robinson's claim accrued when he exhausted his administrative remedies without regard to potential judicial remedies." (*Id.* at p. 592; see also *Goebel v. Lauderdale* (1989) 214 Cal.App.3d 1502 [263 Cal.Rptr. 275] [cause of action for attorney malpractice accrues when client is convicted of crime].)

The Court of Appeal herein also criticized the above cases for relying on the "irremediable damage" rule rejected by the Legislature when it adopted section 340.6. The court stated, "According to *Robinson*, the rule we adopt today will 'further burden our existing overly crowded court calendars with the filing of potentially meritless lawsuits by [clients] waiting to learn whether they indeed will be suffering irremediable harm.' First, *Robinson* mistakenly assumes the continuing viability of 'irremediable.' Second, *Robinson* also implicitly assumes a volume of cases in this category that is not apparent from the number of published opinions on this point (or from any other source available to us). Third, *Robinson* ignores the fact that the same attorney may represent the client on the appeal, thereby tolling the statute for a different reason. (§ 340.6, subd. (a)(2).) Fourth, *Robinson* fails to consider the possibility that an attorney might stipulate to extend the period of limitations until all appeals are concluded. Fifth, *Robinson* ignores the fact that since most appeals result in affirmances, deferral of the malpractice action is a postponement, not an avoidance." Based on the above, we conclude that to the extent *Robinson, supra,* 195 Cal.App.3d 66; *Bell, supra,* 136 Cal.App.3d 1009; *Southland, supra,* 119 Cal.App.3d 417, and *Heyer, supra,* 70 Cal.2d 223, conflict with our decision in this case, they are disapproved.

Finally, plaintiff relies on *In re Blythe* (1893) 99 Cal. 472 [34 P. 108], and *Chambers v. Farnham* (1918) 39 Cal.App. 17 [179 P. 423], to contend that before final resolution of the underlying case, a client may not introduce into evidence the adverse trial court judgment as evidence of the attorney's negligence. Both cases, however, are inapposite. They hold that in order for a separate judgment to be admissible in evidence in a new cause for the *purpose of proving facts therein recited,* the judgment must be a final judgment in the cause. (*Blythe, supra,* 99 Cal. at p. 475; *Chambers, supra,* 39 Cal.App. at pp. 20-21.) These cases simply reiterate the rule of section 1049, which provides, "An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied."

As defendants observe, plaintiff's reliance on *Blythe, supra,* 99 Cal. 472, and *Chambers, supra,* 39 Cal.App. 17, is misplaced. The issue before us is what constitutes "actual injury" for purposes of section 340.6, not what constitutes finality of judgment. Moreover, as the *Chambers* court observed, section 1049 "is limited in its application by the exception that such a judgment may be received in evidence in proof of facts which are merely incidentally or collaterally involved, when such facts are not directly in issue." (39 Cal.App. at p. 21.) The present matter clearly falls within such exception, for the fact of adverse judgment is provable notwithstanding the filing of a subsequent appeal.

## 2. *Legislative History*

■ Section 340.6, subdivision (a), states that "in no event" shall the prescriptive period be tolled except under those circumstances specified in the statute. Thus, the Legislature expressly intended to disallow tolling under any circumstances not enumerated in the statute.

Section 340.6 and its legislative history make clear that once a client has been injured by an adverse judgment, the limitations period commences and is not tolled by filing an appeal absent continuous representation by the trial attorney. (See 340.6, subd. (a)(2).) This "continuous representation" rule was adopted in order to "avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired." (Sen. Com. on Judiciary, 2d reading analysis of Assem. Bill No. 298 (1977-1978 Reg. Sess.) as amended May 17, 1977.) Thus, the Legislature, by creating a limited exception for cases involving continuous representation, clearly intended the limitations period should not be extended beyond final judgment when continuous representation was not an issue.

The policy behind the limited tolling periods in the statute is clear. If we nonetheless hold that the statute is tolled pending an appeal, we allow clients, with knowledge that they have suffered actual injury, unilaterally to control the commencement of the statute of limitations and hence undermine the legislative goal of resolving cases while the evidence is fresh, witnesses are available, and memories have not faded. Accordingly, we decline to adopt plaintiff's position.

## 3. *Decisions in Other States*

As defendants observe, our decision today is further supported by the majority of jurisdictions with statutes substantially identical to our own.

(See, e.g., *Dearborn Animal Clinic P.A.* v. *Wilson* (1991) 248 Kan. 257 [806 P.2d 997, 1006] [where client required to initiate legal action because attorney negligently drafted sales contract, malpractice action accrues "even though the underlying action may not have been finally resolved"]; *Braud* v. *New England Ins. Co.* (La. 1991) 576 So.2d 466, 469-470 [client suffered "appreciable and actual harm" when federal action filed to annul prior judgment favorable to client because of alleged errors by client's attorney; malpractice action not tolled while federal action pending]; *Belden* v. *Emmerman* (1990) 203 Ill.App.3d 265, 148 Ill.Dec. 583 [560 N.E.2d 1180, 1183] [rejecting argument that client not harmed until appeal in underlying case resolved: "[T]he only difference between affirmance and reversal is the amount of damage sustained."]; *Basinger* v. *Sullivan* (Ind.Ct.App. 1989) 540 N.E.2d 91, 94 [malpractice action accrued when clients learned attorney failed to file suit prior to expiration of statute of limitations, even though alternative avenues of relief not yet exhausted]; *Zimmie* v. *Calfee, Halter & Griswold* (1989) 43 Ohio St.3d 54 [538 N.E.2d 398] [malpractice action accrued when trial court invalidated prenuptial agreement and was not tolled during appeal]; *Wettanen* v. *Cowper* (Alaska 1988) 749 P.2d 362, 365 [malpractice action accrued upon entry of adverse interlocutory judgment and was not tolled pending final judgment]; *Hayden* v. *Green* (1988) 431 Mich. 878 [429 N.W.2d 604] [client suffered "appreciable and identifiable harm" when trial court dismissed his suit; malpractice cause of action not tolled during appeal]; *Jankowski* v. *Taylor, Bishop & Lee* (1980) 246 Ga. 804 [273 S.E.2d 16] [client harmed by dismissal of suit even though action could be refiled].)

Plaintiff, in contrast, relies on out-of-state cases interpreting legal malpractice statutes of limitations that do not have the "continuous representation" exception codified in section 340.6, subdivision (a)(2). Thus, these cases are inapposite. The tolling rule plaintiff advances is necessary in such jurisdictions because without it the statute of limitations would run on the client's malpractice action even though trial counsel continued to represent plaintiff on appeal. (See, e.g., *Neylan* v. *Moser* (Iowa 1987) 400 N.W.2d 538, 542; *Amfac Distribution Corp.* v. *Millar* (1983) 138 Ariz. 155 [673 P.2d 795]; *Bonanno* v. *Potthoff* (N.D.Ill. 1981) 527 F.Supp. 561; *Woodruff* v. *Tomlin* (6th Cir. 1975) 511 F.2d 1019.)

Finally, no case in any jurisdiction supports tolling the statute until an appeal of right is resolved, without waiting until review is exhausted on final judgment. Indeed, our prior cases would reject this position outright. (See, e.g., *Lambert* v. *Commonwealth Land Title Ins. Co.* (1991) 53 Cal.3d 1072, 1079 [282 Cal.Rptr. 445, 811 P.2d 737].) In *Lambert,* the insured's cause of action against his title insurer for refusal to defend under section 339 was

tolled until final judgment in the underlying third party action. Equitable tolling was based on the insurer's continuing duty to defend until final judgment, and on the fact that "[t]he Legislature cannot have anticipated the need to provide for equitable tolling during the time of the continuing duty." (*Ibid.*)

### 4. *Retroactivity*

■ Plaintiff requests that if we conclude the limitations period of section 340.6 commences on adverse judgment or dismissal of the underlying action, our holding should not apply to her because it represents a departure from the established law she relied on in delaying the filing of her case, namely, *Heyer* v. *Flaig*, *supra*, 70 Cal.2d 223.

■ We reject plaintiff's request. The general rule is that judicial decisions are given retroactive effect. (*Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 978 [258 Cal.Rptr. 592, 772 P.2d 1059].) Departure from that rule is limited to those narrow circumstances in which considerations of fairness and public policy preclude retroactivity. In sum, "A court may decline to follow the standard rule when retroactive application of a decision would raise substantial concerns about the effects of the new rule on the general administration of justice, or would unfairly undermine the reasonable reliance of parties on the previously existing state of the law. In other words, courts have looked to the 'hardships' imposed on parties by full retroactivity, permitting an exception only when the circumstances of a case draw it apart from the usual run of cases." (*Id.* at p. 983.)

■ With this concept in mind, we reject plaintiff's claim. As explained above, our holding is based on the Legislature's rejection of the "irremediable damage" rule of *Heyer* v. *Flaig*, *supra*, 70 Cal.2d 223, and its subsequent adoption of the rule of *Budd*, *supra*, 6 Cal.3d 195, and *Neel*, *supra*, 6 Cal.3d 176. The majority of cases recently interpreting section 340.6 have also followed the *Budd* and *Neel* reasoning in holding that the statute of limitations accrues on final judgment. (See, e.g., *Worton*, *supra*, 234 Cal.App.3d 1638, 1651.) Our application of these cases to the facts before us does not, therefore, represent a departure from generally accepted principles. We conclude that there is no compelling reason in this case to depart from the general rule of retroactive application of judicial decisions. (See *Newman* v. *Emerson Radio Corp.*, *supra*, 48 Cal.3d at p. 993.)

### III. CONCLUSION

We cannot rewrite section 340.6 to adopt the rule advocated by plaintiff. The statute is clear on its face and the Legislature has provided for tolling in

specific enumerated circumstances, none of which apply here. As noted above, the Legislature intended that "in no event" should the limitations period be tolled except as stated in the statute. Accordingly, the Court of Appeal judgment is affirmed.

Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

**MOSK, J.**—I dissent. For the reasons stated below, consistent with case law and legislative intent, I believe the requirement of "actual injury" in Code of Civil Procedure section 340.6 (hereafter section 340.6) is intended to toll the limitations period for filing legal malpractice actions when, as here, a client takes an appeal of right from the underlying judgment and is awaiting its outcome. The majority's construction of the statute forces litigants to file malpractice actions—and attorneys to defend such actions—without knowing whether the case on which the claim of malpractice is based will be won or lost. This interpretation helps neither the client nor the overburdened judicial system.

The majority err in declaring (maj. opn., *ante*, p. 620) that section 340.6 is "clear on its face." A statute that is clear on its face does not require a lengthy opinion to expound its meaning, nor does it generate the varying interpretations seen in the case law. On the contrary, the phrase "actual injury" in section 340.6 is not self-explanatory, as noted by the State Bar in a prescient letter to the Governor. (Letter of Edward Rubin, Pres. of State Bar, Sept. 13, 1977, warning that the phrase was ambiguous and would lead to litigation.)

The first step in our analysis is to acknowledge that "actual injury" is not self-defining. Then we must look to the rest of the statute to ascertain the phrase's meaning contextually. Next, an examination of the legislative history and the case law is instructive. Finally, I would test the conclusion in the crucible of practicality.

*Statutory Scheme*

Insofar as relevant here, the statute prescribes that two elements must be met before the limitation period runs: first, the client must discover the malpractice; second, *even after* the malpractice is discovered, the period is tolled until there is "actual injury." I emphasize this point because it is important: a client cannot reasonably be expected to commence a lawsuit against the attorney every time the attorney errs; thus, even after the error is discovered, section 340.6 allows the client to wait until the requisite injury is suffered. An analysis of "actual injury" that focuses, as the majority's does, on discovery of the cause of action is inconsistent with the statutory scheme.

The majority further err in their assumption that the "continuous representation" rule resolves the dilemma before us. The implication appears to be that if the actual injury-tolling provision were intended to encompass the pursuit of an appeal of right, the continuous representation rule would be unnecessary. This leap of faith lacks basis. The continuous representation rule serves several purposes. As the majority point out (maj. opn., *ante*, p. 618), quoting from the Senate Judiciary Committee Report, it enables " 'the attorney to correct or minimize an apparent error.' " However, the quotation goes on to observe that the rule also serves other purposes, such as preventing " 'an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired.' "

For the majority, this quotation from the Senate Judiciary Committee Report somehow leads to its unsupported conclusion that the Legislature "clearly intended the limitations period should not be extended beyond final judgment when continuous representation was not an issue." (Maj. opn., *ante*, p. 618.) Nowhere in the legislative history is such an intention even hinted at, let alone made clear.

*Legislative History*

The majority contend that the legislative history of section 340.6 clearly resolves the present issue. This, unfortunately, is not the case. The legislative history neither discusses nor defines "actual injury"; the majority's "clear" answer is nothing more than its own gratuitous construction of an ambiguous statute.

As observed above: section 340.6 does not provide, on its face or in its legislative history, a definition of "actual injury." Thus, I turn to the policies behind the statute's enactment.

The legislative record reveals that Assembly Bill No. 298 (1977-1978 Reg. Sess.), which led to section 340.6, was intended to codify existing case law, including *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421], and *Budd* v. *Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433]. The bill digest quoted from *Neel, supra,* 6 Cal.3d at page 192: " 'when an attorney raises the statute of limitations to occlude a client's action before that client has had a reasonable opportunity to bring suit, the resulting ban of the action not only starkly works an injustice upon the client but partially impugns the very integrity of the legal profession.' "

The Legislature recognized the importance of fairness to malpractice plaintiffs, both for its own merit and for the legal profession's integrity. The

bill thus sought to accommodate both the client's "reasonable opportunity to bring suit" and the need to avoid stale claims, which underlies every statute of limitations.

*Case Law*

In direct contradiction to the majority's holding, California courts confronted with a client who has pursued an appeal of right from the underlying judgment have interpreted "actual injury" to toll the limitation period until the resolution of that appeal. Cases on which the majority rely are not on point, either because there was no appeal of right or because the appeal was not pursued.

The majority rely on a dictum in *Budd* v. *Nixen, supra,* 6 Cal.3d 195, a case preceding the adoption of section 340.6 that was based on an entirely different statute. *Budd* declared that in general a litigant suffers actual damage on entry of an adverse judgment. The majority seek to read into this generalization an unbending rule equating actual injury with judgment. In *Budd,* unlike the present case, the client did not timely pursue his appeal of right; we wisely left room for situations, not posed by the case then before us, in which actual injury and judgment may not be synonymous.

The case law interpreting section 340.6 finds no actual injury pending resolution of an appeal of right taken from the judgment on which the malpractice is based. *Robinson* v. *McGinn* (1987) 195 Cal.App.3d 66 [240 Cal.Rptr. 423] is directly in point. There a police officer injured on the job retained the defendant attorney to represent him in several matters, including a disability pension claim. When sued for malpractice, the attorney raised the bar of section 340.6. The Court of Appeal held that the limitation period was tolled until the city decided the client's administrative appeal of right. The client's awareness of the potential malpractice claim did not automatically start the limitation period running absent the requisite injury, nor was there actual injury while an appeal of right, actually pursued, was pending. (195 Cal.App.3d at p. 75.)

In the recent case of *Troche* v. *Daley* (1990) 217 Cal.App.3d 403 [266 Cal.Rptr. 34], on which the majority mistakenly rely, there was no appeal of right; thus under my proposed construction the limitation period would not have been tolled. There the client was apparently unable or unwilling to pay the requisite fees to appeal and could not get the appeal certified as nonfrivolous in order to appeal, under the governing federal law, in forma pauperis. The Court of Appeal held there was actual injury when the client's underlying federal lawsuit was dismissed because of the alleged negligence of her

attorney. Her unsuccessful attempts to appeal did not affect the date of actual injury. (*Id.* at p. 411.) The court did not discuss the issue whether an appeal in forma pauperis should be considered an appeal of right when, rather than being entitled to it, the litigant was required under federal law to have the appeal certified as nonfrivolous.

Similarly, in *Turley* v. *Wooldridge* (1991) 230 Cal.App.3d 586 [281 Cal.Rptr. 441], although there was an appeal of right, the court refused to toll the limitation period because the client did not pursue that appeal. While not foreclosing the possibility that a pending appeal may prevent a finding of actual injury, the Court of Appeal refused to hold the limitation period was tolled when the litigant had not actually pursued her appeal. (*Id.* at p. 593.)[1]

Indeed, the majority's reliance on *Turley* v. *Wooldridge, supra,* 230 Cal.App.3d 586, is inexplicable, as that case strongly supports my position. Contrasting its situation with that of *Robinson* v. *McGinn, supra,* 195 Cal.App.3d 66, the *Turley* court reiterated that the statute was properly tolled in *Robinson* because the client there had pursued his administrative appeal of right. (230 Cal.App.3d at p. 593.) By contrast, the court stressed that "Turley did not pursue any of the legal or equitable remedies available to her to challenge the purportedly unfair Agreement terms." (*Ibid.*) Thus, the *Turley* court construed "actual injury" precisely as I propose.

In the recent case of *Worton* v. *Worton* (1991) 234 Cal.App.3d 1638 [286 Cal.Rptr. 410], no postjudgment motion or appeal was actually filed, although the client had the right to do so. I fully agree that the statute should not be tolled unless an appeal is actually pursued. The majority in *Worton* held that "[t]he availability of an appeal from a judgment in a civil action does not make 'remediable' the harm the client sustained upon entry of the judgment for purposes of tolling the statute of limitation for legal malpractice." (*Id.* at p. 1652.) Justice Johnson concurred in the judgment, but pointed out (citing *Robinson* v. *McGinn, supra,* 195 Cal.App.3d 66) that although the *mere availability* of an appeal should not preclude a finding of actual injury (234 Cal.App.3d at p. 1653), once an appeal is taken there is no actual injury until it is resolved.

Many of the out-of-state decisions upon which the majority rely construe statutes of limitation unlike our own. Again, the majority fail to realize that

---

[1]In malicious prosecution actions a pending appeal is treated similarly: it tolls the limitation period only if actually pursued. (*Korody-Colyer Corp.* v. *General Motors Corp.* (1989) 208 Cal.App.3d 1148, 1151 [256 Cal.Rptr. 658]; *Rare Coin Galleries, Inc.* v. *A-Mark Coin Co., Inc.* (1988) 202 Cal.App.3d 330, 335 [248 Cal.Rptr. 341].) The majority's construction of section 340.6 gives attorney malpractice defendants an unjustified advantage over other civil defendants by requiring litigants such as Ms. Laird to file the malpractice suit while awaiting the outcome of the underlying case.

our statute contains two distinct requirements: *discovery* and *actual injury.* Many states' statutes of limitation begin running when the client discovers the malpractice regardless of "actual injury." For example, in *Belden* v. *Emmerman* (1990) 203 Ill.App.3d 265, 148 Ill. Dec. 583 [560 N.E.2d 1180, 1182-1183], on which the majority rely, the court analyzed the running of the statute by looking solely at the clients' knowledge of the damages caused by the alleged malpractice. It held the statute began running before the resolution of the appeal from the underlying action because "the element of damage was known or should have been known to plaintiffs . . . ." (*Id.* at p. 1183.)

That may be the law in Illinois as held by its intermediate appellate court, but it is only half the law in California; if we subsume the actual-injury inquiry into the separate question of when the client discovered or should have discovered the alleged negligence, we directly contradict the language of section 340.6. Similarly, in the Indiana intermediate appellate court case of *Basinger* v. *Sullivan* (Ind.Ct.App. 1989) 540 N.E.2d 91, 93, also cited by the majority, the court stated: "By its terminology the statute [of limitations] commences to run when the cause of action is complete."

Contrast the foregoing with our statute. A cause of action for legal malpractice, like any negligence action, requires negligence, causation, and damages. Yet the presence of those three elements alone does not cause the statute of limitations in section 340.6 to run. A fourth element, actual injury, above and beyond the substantive requirements of the tort, is required. Thus, the analyses in the intermediate appellate courts in Illinois and Indiana fall short of what is required in California.

Other cases relied on by the majority also construe statutes distinguishable from our own. For example, in *Hayden* v. *Green* (1988) 431 Mich. 878 [429 N.W.2d 604], the statute began running when the attorney no longer represented the client or when the client discovered the claim. In *Jankowski* v. *Taylor, Bishop & Lee* (1980) 246 Ga. 804 [273 S.E.2d 16, 18], the statute began running at the earliest date on which the client could have brought the malpractice suit, i.e., when the elements of the tort had been met. Both these statutes lack the element essential to this California case: *actual injury.*

Further, contrary to the majority's contention, out-of-state cases interpreting statutes of limitation in the manner I propose do not rest their holding on continued representation of the client by the allegedly negligent attorney. For example, in *Amfac Distribution Corp.* v. *Miller* (1983) 138 Ariz. 155 [673 P.2d 795, 796-799], the court cited numerous reasons for holding that the limitation period did not start running until the pending appeal had been

resolved, and did not explicitly limit its holding to situations in which the same attorney pursues the appeal.

*Construing the Statute Consistently With Precedent and Policy*

As we have seen, the plain language of the statute and its history provide guidance but do not authoritatively define "actual injury." It is therefore appropriate to construe the statute to effect the ostensible legislative purpose (*Lambert* v. *Commonwealth Land Title Ins. Co.* (1991) 53 Cal.3d 1072, 1078-1079 [282 Cal.Rptr. 445, 811 P.2d 737]) of furthering the policies underlying statutes of limitations: i.e., judicial economy, avoiding stale claims, and fairness to the parties.

The separate requirements of discovery and actual injury found in section 340.6 promote judicial economy. Rather than forcing a client to file a malpractice action whenever the attorney falls below the standard of competent counsel, the statute allows the client to wait until the attorney's mistakes cause some palpable harm, i.e., until they result in a lost case. Without the actual injury requirement, a litigant would have to file malpractice actions before knowing the ultimate result—a possible favorable outcome to the litigant despite the attorney's malpractice.

I apply this logic to the situation at hand. To force malpractice plaintiffs to file their actions before they know the outcome of the case upon which their claim is based does not promote judicial economy. The status of the malpractice claim is uncertain until the appeal in the underlying case is resolved, because if it is ultimately decided in the client's favor the malpractice suit may well become moot for lack of damages.[2] The majority's analysis defies rationality with its fictional scenario of a client who files a malpractice action against an attorney after winning the underlying lawsuit; this would be a rare situation indeed.

My resolution of the conflict is consistent with the other policy considerations behind section 340.6. To await the result of a pending appeal will not lead to stale claims because the circumstances under which the limitation period will be tolled are limited. First, as in *Turley* v. *Wooldridge, supra,* 230 Cal.App.3d 586, even though an appeal of right may be available it does not

---

[2]The majority's construction of the statute may also interact with "fast track" trial procedures to threaten potential havoc. Appeals require many months and often years to prepare the record, complete the briefing, hear arguments, and reach a decision. The "fast track" trial procedures adopted by a number of counties could result in a judgment obtained against the attorney in the malpractice action before the appeal in the underlying case is decided; if that appeal is successful, it alters the very foundation of the malpractice judgment. A practical reading of the statute would prevent this topsy-turvy turn of events.

toll the statute unless the litigant actually pursues the appeal. This prevents a client from causing the limitation period to be indefinitely tolled by deferring pursuit of remedies, a concern expressed in *Worton* v. *Worton, supra,* 234 Cal.App.3d at page 1652. Second, the limitation period is not tolled if there is no appeal of right, as in *Troche* v. *Daley, supra,* 217 Cal.App.3d 403, the case in which the client attempted to appeal in forma pauperis under federal law.

The third policy consideration, fairness to malpractice plaintiffs, is also furthered by my construction of the statute. It is impractical to require a client simultaneously to pursue two lawsuits: a malpractice action and an appeal of right. The present case illustrates the dilemma. Here plaintiff pursued her appeal without the aid of counsel, requiring an enormous effort to understand the statutes and rules governing appeals. To compel her simultaneously to prosecute a malpractice suit would be unduly burdensome. The situation is different, however, if the client has an appeal of right but does not pursue it; then her decision not to appeal implies that she considers the judgment of the trial court final.

The majority's contentions fail to persuade otherwise. They parade their "horribles," arguing that memories will fade and witnesses die while malpractice plaintiffs pursue appeals. However, the dangers associated with delay are greatly lessened by the very nature of legal malpractice cases. As one court declared in resolving the present issue: "Unlike medical malpractice or other forms of malpractice which do not occur in the course of litigation, [legal malpractice] generally is memorialized in court pleadings or in hearing transcripts. . . . [T]he dangers associated with delay are lessened because a record will have been made of the actions which form the substance of the later malpractice action." (*Amfac Distribution Corp.* v. *Miller, supra,* 673 P.2d at p. 798.)

The present case illustrates the validity of this observation: a client in Laird's position may rely on legal records to show when she engaged defendants as her attorneys and what they did to pursue the lawsuit. The client may then ask the trier of fact to compare this performance with expert testimony stating what a reasonably diligent attorney would have done. The attorneys may respond with their own expert witness, but the heart of the matter is the legal records that show, for example, when depositions were taken and motions were made. Such formal written evidence will not become stale pending resolution of an appeal in the underlying case.

Further, although the majority correctly point out that some harm is caused by the mere fact that an adverse judgment is entered regardless of

what happens on appeal, the various harms they cite cannot be considered "actual injury." Consistent with policy reasons discussed above, especially judicial economy, I would reject the dictum in *Budd* v. *Nixen, supra,* 6 Cal.3d at page 202, suggesting that substantial harm is suffered by the ordinary expenses that appellants incur to maintain an appeal, such as paying filing and transcript fees and posting a bond; whether such harm is relatively de minimis, or is indeed suffered at all, cannot be determined until the appeal is concluded because these expenses may be recouped by the prevailing party on appeal. (Cal. Rules of Court, rule 26.)

Nor is the reduced settlement value of a case decided adversely in the trial court enough to satisfy the actual injury requirement; if and when the case is *actually settled,* there is actual injury because the settlement represents the litigant's agreement to forgo further remedies. Finally, any added emotional distress caused by the adverse judgment, even if compensable in a malpractice suit when certain requirements are met, is not actual injury. A client may suffer emotional distress whenever the attorney makes a mistake; added distress cannot be the yardstick by which actual injury is measured.

Thus, based on the language of the statute, on legislative history, on case law, and on practicality, I am convinced the majority err in holding there is actual injury while the client yet awaits the resolution of an appeal of right she has actually pursued. Because Ms. Laird filed her malpractice action within one year of dismissing her appeal, I would hold that her malpractice action was timely.

Respondent's petition for a rehearing was denied July 16, 1992, and the opinion was modified to read as printed above. Mosk, J., was of the opinion that the petition should be granted.