[No. C014016. Third Dist. Dec. 20, 1993.]

ZOE ANGELA BEANE, as Executrix, etc., Plaintiff and Appellant, v. JOHN PAULSEN et al., Defendants and Respondents.

**COUNSEL**

Roy A. Gilbert for Plaintiff and Appellant.

Lewis, Carroll & Bacon, Steven A. Lewis and Jeanne M. Carroll for Defendants and Respondents.

**OPINION**

**DAVIS, J.**—Madeline Tucker[1] brought this malpractice action in April 1991 against her former attorneys, alleging that they allowed her meritorious claim in a federal bankruptcy proceeding to be dismissed for lack of prosecution and that this dismissal had adverse res judicata effects in her related state court action.[2] Defendants John Paulsen and Robert Davis brought a motion for summary judgment premised on two grounds.[3] First, they claimed the statute of limitations (§ 340.6) had expired. Second, they asserted they were released from any liability for malpractice committed against the plaintiff when they ceased practicing with their former partner. The trial court granted their motion. Finding neither of these arguments meritorious, we shall reverse and remand.

## SCOPE OF REVIEW

Two factors simplify our review of this matter. With respect to the framework of legal principles that determines which facts are material in the context of this proceeding (*Andalon* v. *Superior Court* (1984) 162 Cal.App.3d 600, 604-605 [208 Cal.Rptr. 899]), the nature of the grounds for the defendants' summary judgment motion does not implicate the substantive law undergirding the allegations of the complaint, so we are not concerned with the pleadings. As for the materials from which we are to determine whether there are "triable" issues presented, the trial court sustained the defendants' evidentiary objection to the affidavit filed by the plaintiff in opposition to the motion (which among its other serious flaws

---

[1]Ms. Tucker died in March 1992; her daughter, Zoe Angela Beane (the plaintiff's executrix), was substituted as the personal representative. (Code Civ. Proc., § 386 [undesignated section references will be to this code].) For convenience of reference, we shall refer to the plaintiff rather than her representative.

[2]We affirmed the dismissal of her state court action in *Tucker* v. *IMCO Realty Services* (Dec. 18, 1990) C006791 (nonpub. opn.).

[3]As only Paulsen and Davis were parties to the motion, we will refer only to them as defendants.

failed to authenticate the exhibits attached to it).[4] Thus, we depart from the paradigm for appellate review of summary judgment motions (see *AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203]), and simply decide de novo the question of the legal significance of the facts adduced by the defendants.[5]

## FACTS

To quote the genesis of this matter from our opinion in *Tucker* v. *IMCO Realty Services, supra*, C006791, Mrs. Tucker (a retired schoolteacher) and her son (Bernard Ferris) "were co-owners of a duplex in Fair Oaks. On March 31, 1983, the 79-year-old appellant and her son executed loan documents, including a note for $105,000 and a deed of trust on the property . . . . Ferris and his partners, Bill and Clay Biscoe, used the loan proceeds to purchase a bar."

When the business failed, Ferris and his partners filed for bankruptcy. In an effort to prevent foreclosure on her home, Mrs. Tucker retained William Dunbar to represent her in the bankruptcy proceedings in an effort to rescind the note on grounds of undue influence. He filed an adversary complaint in the action in May 1985. In January 1987, Mr. Dunbar associated E. John Vodonick and his firm, Paulsen, Vodonick & Davis (PVD), in the bankruptcy action; Mr. Vodonick then filed a state court action (*Tucker* v. *IMCO Realty, supra*) in her behalf in March 1987,[6] as well as filing her answer in an unlawful detainer action brought by the holder of the note on the Fair Oaks property. In May 1987, the Fair Oaks property was lost to foreclosure, although Mrs. Tucker remained in possession until March 1991.

The bankruptcy court issued a notice of intent to dismiss for failure to prosecute in August 1987. The following month, it issued the order of dismissal.

PVD was the business name of the professional corporation of Paulsen & Vodonick, Ltd. (formed in 1985), in which the three partners were shareholders. In February 1988, the three principals of Paulsen & Vodonick, Ltd.,

[4]The plaintiff purports to challenge this evidentiary ruling for the first time in her reply brief. This is improper and is grounds for disregarding the argument. (*Neighbours* v. *Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [265 Cal.Rptr. 788].) Thus, we confine ourselves to the observation that, having reviewed the declaration, we do not find the court abused its discretion in so ruling.

[5]Although section 437c was amended effective January 1, 1993, the defendants do not argue there is any change in the standards for summary judgment as a result, or that any such change should be applied retroactively. In light of the legal insufficiency of their motion, we need not consider the issue either.

[6]As we characterized it in *Tucker*, her complaint contained causes of action for "fraud, conspiracy, cancellation of instrument, breach of fiduciary duty, and declaratory and injunctive relief."

agreed to sever their relationship. Mr. Vodonick vacated their shared offices and relocated to Roseville in March 1988. Defendants Paulsen and Davis withdrew their ownership interests in the corporation and established a joint practice. Mr. Vodonick thus became the sole shareholder of Vodonick & Paulsen, Ltd. He maintained Mrs. Tucker as his client. At some point, he told her he was setting up a new practice with Mr. Dunbar. He could not recall whether he ever told her that defendants Paulsen and Davis would no longer be representing her; in any event, he did not solicit her express ratification of the termination of their representation of her.

Although we do not find a copy of the letter itself in the record, apparently in August 1988 defendant Paulsen directed his bookkeeper to send notices of past due accounts to former PVD clients, including those currently represented by Mr. Vodonick (such as Mrs. Tucker), in order that the liabilities of the corporation could be satisfied. This notice included a statement that the principals of PVD had split into separate practices. Mr. Vodonick wrote a letter of complaint to defendant Paulsen, asking him not to have any further correspondence with Mr. Vodonick's current clients and stating that he instructed his clients to ignore any future billings from either defendant. According to defendant Paulsen's reply, he had been told by Mr. Dunbar that apparently Mrs. Tucker was upset "because [she] had received a bill indicating that her account was overdue but, apparently, she ha[d] paid her bill to [Mr. Vodonick]."

Mr. Vodonick noticed a motion for February 27, 1989, to set aside the September 1987 bankruptcy court order of dismissal. However, he failed to appear at the scheduled hearing and the court denied the motion. He filed a petition for reconsideration, which the court denied in April 1989, specifically disbelieving his proffered excuse for failing to appear at the earlier hearing.

Meanwhile, "In January 1989, [the defendants in the state court action] noticed a motion for summary judgment . . . on the ground, inter alia, that the bankruptcy court dismissals were on the merits and covered all the claims asserted in [Mrs. Tucker]'s . . . complaint. . . . [¶] The trial court granted summary judgment [in May 1989], ruling that 'the dismissal of the adversary action in Bankruptcy Court is res judicata and is a bar to the action.'" (*Tucker* v. *IMCO Realty, supra*, C006791.)

In September 1989, Mr. Vodonick at last "informed Mrs. Tucker in writing of the dismissal of the adversary complaint and of its negative impact on the underlying state court litigation." Mrs. Tucker made no further payments for any fees or costs after December 1989. However, Mr. Vodonick continued to represent her interests as late as January 1991, when he filed

a petition for rehearing of this court's December 1990 decision in *Tucker* v. *IMCO Realty, supra,* C006791, affirming the summary judgment ruling.

In its ruling on the summary judgment motion in the present action, the trial court stated, "Plaintiff's injury occurred in September 1987 when the adversary claim in bankruptcy was dismissed. The statute of limitations, however, could not begin to run until September 1989 when Mr. Vodonick told plaintiff . . . that the case had been dismissed. The continuous representation exception to the statute tolled the statute until 1990 [*sic*] when the representation by Mr. Vodonick ceased. *Movants represented plaintiff when the injury occurred.* . . . [¶] Movants did not have a standard procedure for advising clients that the firm split up. A notice was sent to plaintiff by movants in August 1988 as a billing for an overdue account. Plaintiff was also told by Mr. Vodonick. Plaintiff then knew that movants were no longer her attorneys, however, plaintiff did not know of the dismissal at that time so the statute did not begin to run until September 1989 as to movants. The action, then, is barred by the statute of limitations."

DISCUSSION

I

█ Mrs. Tucker was not represented by a partnership but by a professional corporation, PVD. This distinction seems to have escaped the litigants throughout these proceedings. It is not a distinction, however, that affects our analysis of the question of liability of defendants Paulsen and Davis for PVD's negligent provision of professional services.

In California, the Legislature has authorized the formation of professional corporations for the purpose of practicing law if they are registered with the State Bar. (Bus. & Prof. Code, §§ 6160, 6161.) The Legislature has also mandated that the State Bar, as a condition of the registration process, require the corporation to "maintain security by insurance or otherwise for claims against it by its clients" for malpractice. (*Id.,* § 6171, subd. (b).) Accordingly, the State Bar requires "For law corporations that apply to the State Bar for a Certificate of Registration on or after October 27, 1971, security for claims against it by its clients for [malpractice] shall consist of an executed copy of [a written agreement . . . by each of the shareholders, jointly and severally guaranteeing payment by the corporation of all claims established against it by its clients for [malpractice] arising out of the practice of law by the corporation . . . .]" (State Bar Law Corp. Rules, rule IV B(3), see 23 West's Ann. Cal. Codes, pt. 2 (1981 ed., 1993 cum. supp.) p. 787.) This written guarantee has certain financial limits per claim and is to be offset by any available malpractice insurance. (*Ibid.*)

Putting aside questions of liability caps or offsets due for insurance (being factual matters unaddressed by the defendants in their summary judgment motion), defendants Paulsen and Davis have joint and several liability to the former client of their corporation as guarantors of PVD's financial responsibility for malpractice. Considering it appears to be undisputed that PVD is insolvent, this would not be any different than their joint and several liability had they simply been in a partnership at the time the alleged malpractice was committed against Mrs. Tucker.

As a matter of statutory interpretation, the courts of Ohio have reached a similar conclusion. Under the rules of the Ohio Supreme Court, " '. . . participation by an individual as a shareholder of a legal professional association shall be on the condition that such individual shall . . . guarantee the financial responsibility of the association for its breach of any duty, whether or not arising from the attorney-client relationship.' " (*Reiner* v. *Kelley* (1983) 8 OhioApp.3d 390, 393 [457 N.E.2d 946, 951].) The Court of Appeal concluded that under this rule it was proper to hold a coshareholder liable for his coshareholder's malfeasance (along with the coshareholder himself and the association) as a guarantor. (*Id.* at pp. 390-391, 394 [457 N.E.2d at pp. 948-949, 952].) (That the rule has a broader ambit for types of acts for which other shareholders must respond is not pertinent in the present case.) We also note that in Wisconsin, the pertinent statute expressly provides that the liability of shareholders is joint and several in the performance of legal services by the corporation. (See *Melby* v. *O'Melia* (1979) 93 Wis.2d 51, 52-53 [286 N.W.2d 373, 374].)[7]

Thus, the result in the context of a professional corporation is the same as that assumed by the parties—vicarious liability of defendants Paulsen and Davis. We now proceed with our analysis of their claim that they severed their liability for an alleged malpractice regarding Mrs. Tucker when they left the corporation (adhering to the less-cumbersome terminology of partnership and the applicable tenets of vicarious partnership liability).

We first briefly dispatch the defendants' alternative ground for affirming the trial court. They claim they effectively severed their relationship with Mr. Vodonick and PVD by August 1988, when Mrs. Tucker was given

---

[7]Relying on their inherent power to regulate the practice of law, the supreme courts of Georgia and Hawaii have ruled that lawyers may not limit their traditional liability for malpractice to clients through the vehicle of incorporation. (*First Bank & Trust Co.* v. *Zagoria* (1983) 250 Ga. 844, 845-847 [302 S.E.2d 674, 675-676,]; *Petition of Bar Association of Hawaii* (1973) 516 P.2d 1267, 1268; but compare *Matter of R.I. Bar Association* (1970) 106 R.I. 752, 760-761 [263 A.2d 692, 697].) In the present case we have an explicit statutory basis for holding the former shareholders jointly and severally liable. We therefore do not express an opinion regarding the "inherent power" path these courts have taken.

notice of the break-up of the firm, and consequently cannot be held liable for their former partner's failure in 1987 to prosecute the bankruptcy proceeding. They cite *Redman* v. *Walters* (1979) 88 Cal.App.3d 448 [152 Cal.Rptr. 42]. The principle on which they rely is inapposite.

In *Redman*, the plaintiff engaged the services of a partnership in 1969. In 1970, defendant Walters left the firm, never having met the plaintiff or participated in his lawsuit. There was no communication with the plaintiff about the defendant's separation from the partnership, other than a change in the letterheads in correspondence sent to him or the headings of pleadings. In 1974, the plaintiff's action was dismissed for failure to prosecute, at which point he brought suit against the partnership and defendant Walters. (88 Cal.App.3d at pp. 450-451.) In reinstating the plaintiff's action as to defendant Walters, the *Redman* court first noted the principle of partnership law that in dissolution, the partnership "continues" as to contractual obligations until they are satisfied. (*Id.* at p. 453.) Thus, having been a member of a partnership that contracted with the plaintiff, the defendant continued to be a partner for purposes of that contract until it was discharged, and as a partner he would have vicarious liability for the negligent acts of his partners in performing the contract. (*Ibid.*) The only way in which the defendant could have been discharged from future vicarious liability as a member of this "continuing" partnership was if the plaintiff had given express or implied consent to nonrepresentation, "or perhaps by estoppel." (*Ibid.* [citing Corp. Code, § 15036, subd. (2)[8]].) The court found that the mere fact the plaintiff had received documents indicating the change in membership of the partnership was insufficient on summary judgment to establish the "existence or absence of estoppel, or waiver" because that was "ordinarily a question of fact" except where the evidence is undisputed and is susceptible of only one reasonable inference. (88 Cal.App.3d at p. 455.)

As characterized in a malpractice treatise, "The court rested its decision upon principles of general partnership law, and cautioned law firms that a partner can only terminate *prospective* liability if the client knows of the partner's withdrawal and consents to terminating that individual's obligations." (Mallen et al., Legal Malpractice (3d ed. 1989) § 5.3, p. 269, italics supplied.) We emphasize that key word, because it is one thing to say that a client by conduct can accede to nonrepresentation by a departing partner, absolving that partner of subsequent negligent acts with which he has no

---

[8]The statute provides, "A partner is discharged from any existing liability upon dissolution of the partnership by an agreement to that effect between himself, the partnership creditor[,] and the person or partnership continuing the business; and such agreement may be inferred from the course of dealing between the creditor having knowledge of the dissolution and the person or partnership continuing the business."

connection, and it is quite another matter to assert, as do the defendants before us, that the client also releases the departing partners from liability for *negligent acts already committed, without any showing that the client was consciously relinquishing the right to sue.* We believe this is the point the trial court sought to make in its minute order, albeit cryptically, when it referenced the fact "[m]ovants represented plaintiff when the injury occurred" and did not refer to this ground for the motion any further. Thus, regardless of whether or not the facts adduced in the trial court are sufficient to infer a release by Mrs. Tucker of any future representation by the defendants, they certainly cannot be read as releasing the defendants from liability for the past tortious acts of their partnership unknown to Mrs. Tucker until 1989.

## II

This brings us to the trial court's ruling on the issue of the statute of limitations. Finding no case in point on this particular question, we first retreat into the general principles involved.

■ "[A] cause of action for legal malpractice accrues when the client discovers . . . the facts essential to the malpractice claim, and suffers appreciable and actual harm from the malpractice." (*Laird* v. *Blacker* (1992) 2 Cal.4th 606, 611 [7 Cal.Rptr.2d 550, 828 P.2d 691]; accord, § 340.6, subd. (a).) Actual harm commences from the date of the adverse judgment. (2 Cal.4th at p. 615.) ■ Thus, Mrs. Tucker suffered actual harm in September 1987, which the defendants do not dispute she first discovered in September 1989.

■ Section 340.6 also provides that the statute of limitation is tolled during the time "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." (*Id.*, subd. (a)(2).) "This 'continuous representation' rule was adopted in order to 'avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired.' " (*Laird* v. *Blacker*, *supra*, 2 Cal.4th at p. 618.) ■ Since Mr. Vodonick continued to represent Mrs. Tucker until January 1991, the statute of limitations was tolled as to him until that date, making the April 1991 complaint timely.

But what of the defendants, whose liability is essentially vicarious (or at best passive, in the sense they failed to supervise their partner's handling of

the case of their firm's client)? In the trial court's view, the statute of limitations began to run as to *them* on the date of Mrs. Tucker's discovery of the fact of her actual injury in 1989. We cannot agree. This would place Mrs. Tucker in an extremely awkward position, preserving on the one hand her attorney-client relationship with the active tortfeasor, while chasing his former partners to the courthouse on the other. This would undermine the express legislative intent, since the former partners if sued by September 1990 would immediately file cross-claims against Mr. Vodonick, disrupting the attorney-client relationship. Moreover, as past cases have recognized, the fiduciary nature of the relationship between attorney and client will lull the client into inaction even after the client hears about an adverse result. (*Day v. Rosenthal* (1985) 170 Cal.App.3d 1125, 1165-1166 [217 Cal.Rptr. 89].) Indeed, in the very letter informing Mrs. Tucker of the adverse consequences in her federal and state actions, Mr. Vodonick made soothing statements about the likelihood of ultimate vindication (all while soliciting additional payment on her account with the firm), and as late as November 1990 stated "we still ha[ve] not heard anything from the appellate court . . . . We deeply want to continue to work for you and believe that you have an excellent case." How, under these circumstances, Mrs. Tucker was thus to realize she must sue the former partners of this siren is not explained, and we believe it is irreconcilable with her maintenance of the fiduciary relationship with the defendants' former partner. Consequently, tolling for reasons of continuous representation has an "all for one and one for all" application when one (or more) of several former partners continue to represent the allegedly wronged client.

## DISPOSITION

The undisputed facts adduced by the defendants are insufficient as a matter of law to establish either defense posited by them. The judgment is reversed and remanded with directions to enter a new order denying the motion by defendants Paulsen and Davis for summary judgment. The plaintiff shall recover costs of appeal.

Blease, Acting P. J., and Scotland, J., concurred.