Filed 3/28/14  Marriage of Furie CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re Marriage of KELLY and RUSSELL FURIE. | B241754 |
| | (Los Angeles County Super. Ct. No. PD048281) |
| KELLY FURIE, Respondent, v. RUSSELL FURIE, Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Terrell, Judge.  Remanded in part, affirmed in part.

Russell Furie, in pro. per., for Appellant.

Law Offices of Rosenthal & Associates, Lisa F. Rosenthal for Respondent.

_____

**SUMMARY**

Russell Furie (Father), in pro. per.,[1] appeals from an order of the superior court increasing his child support obligations from $1,454 to $2,136 and awarding $5,000 in attorney fees to Kelly Marie Furie (Mother). Father also appeals the trial court's denial of his motion for reconsideration. We reverse and remand in part and affirm in part.

**BACKGROUND**

Mother and Father married in 1996. They had two children, one born in January 1998 and the second born in January 2001.

## I. Stipulated Judgment

In February 2010, Mother, through counsel, filed an uncontested judgment for legal separation incorporating a signed settlement agreement between parties dated from September 2009 ("Judgment"). Under the Judgment, Mother and Father waived spousal support and agreed that the court "shall not retain jurisdiction to award spousal support to either party." In the Judgment, Father agreed he would pay Mother $1,454 per month in child support, half of school or child care costs and half of uncovered medical bills as well as maintain health insurance for the children. The Judgment also provided that "[c]hild support will be guideline support and maybe [*sic*] modified accordingly." Mother and Father also agreed to joint legal custody of their two children, but gave Mother full physical custody in the event she moved out of the family home.

The Judgment also awarded certain community property assets to each party as his or her sole and separate property. Among other things, Father was awarded 100 percent ownership of RKF Investments Inc. ("RKF Investments"), 100 percent ownership in KMF Investments Inc. ("KMF Investments") 100 percent ownership stake of RK Furie Family's Trust's 50 percent ownership of H. Roth Management LLC, the family home on Terravista Court ("Family Home"), a time share, and "[a]ll proceeds/income from either Skura International Trading Company or third parties, which relates to all of [Father's]

---

[1] Father was in pro. per. in the trial court for filings but had counsel for the limited purpose of argument at hearings.

actions/claims against Skura Intercontinental Trading Company, et al." The Judgment also provided that Father would be responsible for all debts pertaining to the Family Home and provided that Mother "shall be allowed to reside in the family home" until their youngest child reached the age of majority.

## II. Mother's February 2011 OSC and the March 29, 2011 Decision

In February 2011, Mother filed an Order to Show Cause ("February 2011 OSC") seeking to modify child support and for attorney fees and costs. Mother declared that after the February 2010 judgment, Father had "moved out of the family home and has purchased a townhome in his name only. He has stopped paying the mortgage on the family home and is refusing to pay the mortgage which has caused me to file for chapter 7 bankruptcy" and Father was in arrears on the family home in the amount of $40,361.20. Mother also declared that Father obtained a $250,000.00 lump sum cash settlement from "his former employer 'Skura.'" Mother asserted her belief that Father did not intend to return to work and planned to live off of the lump sum settlement. Based on the DissoMaster software program, Mother contended that Father "should be paying $3,391.00 in child support and $4,380.00 in spousal support for a total of $7,771.00 per month," based on an assumed monthly income for Father of $20,834.[2]

In March 2011, Father, in pro. per., filed a responsive declaration describing as false the "claim that I am responsible for the [family home] obligations" and asserting Mother and Father had an agreement for Father to give Mother all KMF assets in exchange for Mother releasing Father from the family home debt obligations. Father's declaration also stated that there was never any agreement to use the Skura settlement funds to pay for the debt on the family home or to include the funds for purposes of calculating Father's child support. In addition, Father's declaration asserts that Mother

---

[2] Apparently this amount was calculated by taking the $250,000 settlement from Father's employer and dividing by 12 months and rounding up to the dollar.

should be assumed to have income of $2,000 per month from her "A+ business", apparently referring to a teaching supply business run by Mother.[3]

At a March 29, 2011 hearing on Mother's February 2011 OSC, the trial court stated that the Judgment would "remain in place except that the mortgage payments, instead of just being listed as to pay mortgage, mortgage is going to be converted to a dollar amount, whatever that dollar amount is." The trial court also noted that parties were going "outside the narrow confines" of the pending February 2011 OSC and that Father should file his own Order to Show Cause if he wanted to alter the obligations under the Judgment.

The trial court's order after the March 29, 2011 hearing ("March 29, 2011 decision") ordered Father to pay $4,709.09 "as support"[4] and stated that the "figure represents the expenses associated with the family home to which [Father] agreed to pay for in the [Judgment]." The trial court's March 29, 2011 decision also ordered Father to bring the mortgage current but did not order Father to pay any attorneys fees to Mother and left unchanged his child support obligation.

Father filed a motion for reconsideration, which Mother opposed and sought attorneys fees. The trial court denied the motion for reconsideration, noting that no newly discovered evidence was presented and denying Mother's request for sanctions.

---

[3] Also in March 2011, Father filed an "Income and Expense Declaration" listing average monthly income of $1,542 from disability, $2,374 from workers' compensation and $858 from other sources as well as $104,950 in assets held in deposit accounts and $218,000 in real and personal property. Father listed monthly expenses of $2,720 and $2,000 in credit card debt.

[4] The trial court later characterized its March 29, 2011 decision as ordering "that spousal support would be set at $4,709, which is the equivalent amount as Father had been obligated to pay on a monthly basis to pay for the mortgage on the family residence in the Judgment" and characterized the decision as "not increase[ing] Father's support obligations" but "merely convert[ing] Father's obligation to pay the mortgage to a specific dollar figure, which the court designated as spousal support."

4

### III. Father's July 2011 OSC

On July 5, 2011, Father filed an "[Amended] Declaration in support of Order to Show Cause re Modification of Stipulated Judgment" ("July 2011 OSC") in which Father asserted that he agreed to accept responsibility for the family home debt obligations in the Judgment only because of the expected income from KMF Investments as represented by Mother and that he no longer had ownership of KMF Investments' assets because Mother had dissolved KMF and removed its assets. Father requested that the court modify the Judgment to reflect that ownership of KMF Investments and its assets were transferred to Mother in exchange for Mother releasing Father from the family home debt obligations.

Although not included in the record, Father apparently at the same time filed an Order to Show Cause "for modification of custody and child support."

On August 9, 2011, Mother filed a responsive declaration to Father's July 2011 OSC in which Mother stated that Father had "buyer's remorse" regarding the stipulated Judgment and "wants to get out of" it by "giv[ing] to me KMF Investments" but that Mother did not want any assets from Father and only wanted him to abide by the Judgment. As to Father's OSC on custody and child support, Mother argued that Father was trying to modify the Judgment without any change of circumstances. As part of the her "Responsive Declaration to Order to Show Cause or Notice of Motion" form, Mother checked the box indicating "Attorneys Fees and Costs" and a box stating "I consent to the following order: [Father] to pay fees in the amount of $1,000.00 for a baseless motion per Family Code 270/271."

At the August 26, 2011 hearing, the trial court denied without prejudice Father's July 2011 OSC, finding that it was an inappropriate avenue for relief. Father was represented by counsel at the hearing, but counsel was hired for the limited purpose of arguing at the hearing and did not help Father prepare his declaration or reply. The court continued the hearing on Father's OSC on custody and child support because Mother's counsel did not receive a complete copy of Father's declaration and continued the issue of attorneys fees and sanctions to the same date.

5

## IV.    Mother's Motion for Turnover Order

On September 9, 2011, Mother filed a motion for "Turnover Order re: Assets" and for Attorneys Fees.  According to the motion and Mother's declaration, Father had not complied with the court's March 29, 2011 decision ordering him to bring current the mortgage on the family home which now faced foreclosure and asked the court to order that $80,000 from a trust held for Father from his Skura litigation be released to bring the mortgage current, plus an additional $5,000 in attorney fees to Mother's counsel for having to bring the motion.[5]

At the September 22, 2011 hearing,[6] the trial court denied Mother's motion because the trustee stated that although the term of the trust expired and the funds should have been disbursed, he was notified by the bankruptcy trustee in Mother's bankruptcy that there was a claim being made on the trust funds and he stopped making disbursements.  The trial court gave as an additional reason for its denial of the motion the court's concern that the trust funds were from "a settlement agreement for a personal injury claim that was designed to address the disabilities that [Father] is now facing." After Mother's counsel sought to get funds from other sources, the trial court deemed the discussion to be notice to Father that Mother was seeking to have the court modify its order requiring Father to bring the mortgage current to a dollar certain amount in order to execute on the judgment.

At the hearing the following day, September 23, 2011,[7] the trial court ordered Father to "bring the mortgage current on [the family home] by paying the amount of $85,401, by no later than 3:30 p.m. on Monday, which is September 26, 2011."

On September 26, 2011, Mother filed a supplemental responsive declaration in which Mother checked the box on the form indicating "Attorneys Fees and Costs" and a

---

[5] Father submitted a responding declaration that was marked as received, but was not filed as it was not in the proper format.

[6] Father was represented by counsel for the limited purpose of the hearing.

[7] Father was again represented by counsel for the limited purpose of the hearing.

box stating "I consent to the following order: [Father] to pay fees in the amount of $5,000.00 for a baseless motion per Family Code 270/271." In her declaration, Mother disputed Father's assertion that she closed KMF Investments without his consent. Mother also stated that Father knew that KMF Investments and the teaching supply business it ran "was not making any money" and that Father had failed to pay the $4,079 in spousal support ordered by the court. Last, Mother's declaration asked the court to order Father "to pay for my attorney fees in having to respond to this frivolous matters in the amount of $5,000.00 forthwith."

On September 28, 2011, Mother filed an Income and Expense Declaration listing payments of $245 per month for medical insurance and no income.

### V. Contempt Proceedings

On September 28, 2011, Mother filed an order to show cause and affidavit for contempt ("Contempt OSC") in which she stated that six months of spousal support (for a total of $28,254) was unpaid and the $85,401.00 to pay the mortgage was also unpaid, despite the court's order from the prior week ordering Father to provide a check to pay the mortgage.

On September 30, 2011, Father filed a reply declaration in support of his OSC to modify child support and custody. On October 6, 2011, Father filed an Income and Expense Declaration listing average monthly income of $1,542 from disability, $2,374 from workers' compensation and "$1900 from company" as well as $400 in assets held in deposit accounts and $15,500 in personal property. Father listed monthly expenses of $5,161 and $13,080 in credit card debt.

At the January 4, 2012 hearing, the court denied Mother's Contempt OSC after Father's public defender on the matter noted that under the Judgment the court's jurisdiction over spousal support was terminated. Father's counsel for hearings, however, was not present and Father was unable to go forward on his OSC re child support and custody. The court also "address[ed] the issue of potential sanctions or attorneys fees for failure to be ready today. This is your OSC; you need to be ready to go. Now, I'm not

saying I'm going to sanction you, but I think that that's an issue that I'm going to put you on notice on and we'll address at the next date."

## VI.     Hearings on Child Support Modification

On January 11, 2012, Mother filed a brief asking the court to correct its March 27, 2011 decision ordering spousal support despite the parties' stipulation that the court was without jurisdiction to award spousal support, and instead increasing the $1,454.00 in child support stipulated in the Judgment by the $4,709.00 in spousal support ordered in the March 27, 2011 decision to cover the debt obligations on the family home -- for a total of $6,163.00 per month in child support. Mother argued that the parties had in effect stipulated to a "*Duke* order" [8] allowing the minor children to continue to live in the family home.

The court conducted hearings on Father's OSC on child support on January 13, 2012 and January 27, 2012.[9] A witness who invested with Father in one of his companies testified Father ran the business but could not make major expenditures or withdrawals from the account without the witness's approval and that the 50-50 split in ownership only applied to income generated after capital investments were repaid, which had not occurred. Another witness testified about the operations of Father's payday loan business.

Mother testified that she had no income from her online teaching supply website. Father testified Mother sold KMF Investments and Father did not receive any assets when it was sold. Father also testified that he stopped paying the mortgage on the family home in 2010 because he was relying on a projected $10,000 income from A+ Teaching which was owned under KMF Investments. Father testified that he had income of $1,542 from disability, $2,300 from workers' compensation and $2,000 from his business.

---

[8] *In re Marriage of Duke* (1980) 101 Cal.App.3d 152.

[9] Father's counsel for the limited purpose of appearing at hearings was not present at the January 13, 2012 hearing, but Father agreed to proceed with the testimony from third party witnesses without counsel. At the January 27, 2012 hearing, Father was represented by new counsel for the limited purpose of the hearing.

8

Father testified, however, that his business was running at a deficit of about $350 per month and the amount of income he would get from his business would need to be reduced to $1,600. Father also testified that he used the majority of his income from the business to pay for a variety of bills, including the "credit line for the small business loan which I assumed for the stipulated judgment, the credit card interest, the medical insurance for the kids," "cell phone, . . . other medical bills[,] . . . auto, [and] miscellaneous."

### VII. March 6, 2012 Decision

In its March 6, 2012 Statement of Decision and Order Re: Child Support and Attorney Fees ("March 6, 2012 Decision"), the trial court increased Father's child support obligations to $2,136 per month and ordered Father to pay a total of $5,000 to Mother's counsel as a contribution to Mother's attorney fees. The trial court noted that it had conducted a series of hearings, presenting testimony from parties and witnesses, and that the court's credibility findings were "based on its observations of both the words and demeanor of each witness."

The March 6, 2012 Decision vacated the $4,709 spousal support provision in the court's March 29, 2011 decision and declined to convert the spousal support into additional child support. The trial court noted that its prior order from the March 29, 2011 hearing ordered Father to pay $4,709 in spousal support which was the equivalent amount Father was obligated to pay on a monthly basis to pay for the mortgage on the family home under the Judgment, but that the court at that time did not realize that the judgment contained an agreement by both parties to permanently waive spousal support and to terminate the trial court's jurisdiction to award spousal support. The trial court noted that the settlement agreement provided that both parties permanently waived spousal support and the Judgment terminated the court's jurisdiction to award spousal support.

The trial court rejected Mother's argument that the stipulation in the Judgment for Father to pay for the family home debt obligations constituted an agreement to a *Duke* order that should be designated as additional child support, noting that the combined

9

amount of agreed upon child support and the debt obligation on the family home would be "far higher than any realistic child support guideline calculation for the parties." Thus, the March 6, 2012 Decision rejected Mother's argument that the $4,709 spousal support provision of the March 29, 2011 Order should be converted to child support and stated that Father "remains obligated to pay the mortgage and all other expenses associated with the family residence, but such an obligation cannot be re-characterized as an additional child support obligation."

In its March 6, 2012 Decision, the court found to be credible the third party witnesses and "[n]one of them supported Mother's argument that Father's income exceeded what he reported." Likewise, the court found that none of the bank records provided demonstrated that Father's income was materially different than what he reported. The court noted that while it had discretion to impute income to a parent's non-income-producing assets, such as Father's trust fund reserves from his personal injury suit as well as cash reserves in his investment companies, Mother did not produce any evidence suggesting what a fair rate of return would be and, thus, the court declined to impute additional income to Father.

The March 6, 2012 Decision also rejected Father's contention that income of $2,000 per month should be imputed to Mother and that he overpaid child support by about $20,000. The court found that Father had failed to meet his burden of showing that Mother had the ability and opportunity to work. Likewise, the court found that Father failed to meet his burden of showing that he overpaid child support as the canceled checks he presented left "unclear whether Father's alleged payments to Mother, even if they were made, were actually for child support or for some unrelated purpose."

In sum, the court concluded that Mother had no monthly income and Father had monthly income of $1,542 from disability benefits, $2,374 from workers' compensation and $1,900 from business interests, for a total of $5,816 per month. Based on these numbers, the court calculated Father's child support to be $2,136 per month.

The court then addressed Mother's request for $1,000 in attorney fees in her August 9, 2011 Responsive Declaration and her request for $5,000 in attorney fees in her

10

September 26, 2011 Supplemental Response. The court awarded Mother $1,000 in attorney fees as a contribution based on the financial disparity between parties and $4,000 as sanction under Family Code section 271, finding sanctions were "appropriate and necessary against Father for his positions on custody and visitation and his request to modify property provisions of the Judgment," noting that Father withdrew his custody claim without explanation after Mother responded and Father's property modification claims, even if factually true, were "faulty as a matter of law." Based on the totality of the record, the court concluded that at least "$4,000 in attorney fees were incurred by Mother due solely to Father's unreasonable positions."

## VIII. Motion for Reconsideration

On March 16, 2012, Father filed a lengthy motion for reconsideration arguing, inter alia, that he had come into possession of new impeachment evidence on February 1, 2012. Specifically, Father alleged that he had received on February 1, 2012 a 1099-K tax form from a credit card payment processing company, Evalon, Inc., showing that about $25,000 in payments had been made to RKF Investments in 2011. Father alleged that these payments were related to Mother's A+ teaching business.

After a hearing, the court on May 20, 2012 denied the motion for reconsideration, stating that it found no new or different facts, circumstances or law. The court also awarded another $500 in attorney fees to Mother's counsel.

Father filed a timely notice of appeal from the March 6, 2012 Decision and the denial of the motion for reconsideration.

## DISCUSSION

Father's in pro. per. status does not exempt him from the rules of appellate procedure or relieve him of his burden on appeal. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984.)

## I. Increase in Child Support

The trial court's March 6, 2012 Decision increased child support payments to $2,136.

11

"An award of child support rests in the [trial] court's sound discretion and cannot be overturned absent a showing of a clear abuse of discretion. 'An appellate court does not substitute its own judgment; rather it interferes only if no judge could reasonably have made the order under the circumstances.' [Citation.]" (*In re Marriage of Hubner* (2001) 94 Cal.App.4th 175, 184.) It is the appellant's burden to affirmatively demonstrate error in the challenged order, and to demonstrate the error's prejudicial impact on the appellant. (*Denham v. Superior Court of Los Angeles County* (1970) 2 Cal.3d 557, 564.)[10]

With the exception of the allocation of health insurance expenses, Father has failed to demonstrate that the trial court abused its discretion in calculating the increased child support amount.

## A. Mother's Income

The trial court did not impute any income to Mother because it found that Father had not met his burden of demonstrating that Mother had the ability and opportunity to be employed. Father contends that the lower court erred in refusing to "acknowledge evidence proving that [Mother] continues to earn income from her ongoing business known as A Plus (or A+) Teaching Supplies" and "abused its discretion on [Mother's] credibility and ability to earn money."

Father has failed to demonstrate that the trial court abused its discretion by not imputing income to Mother. Preliminarily, to the extent Father challenges the trial court's credibility determinations, we neither reweigh the evidence nor reassess credibility determinations, as "'[t]he Court of Appeal is not a second trier of fact . . . .' [Citation.]" (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531; *Estate of Young* (2008) 160 Cal.App.4th 62, 76.)

---

[10] Father mistakenly argues based on this standard that if the "original judgment" containing parties stipulated agreement was correct on any theory it must be affirmed. The relevant trial court decision for this appeal, however, is the March 6, 2012 Decision and we apply the standard of review to this decision.

12

On appeal, Father also argues that the trial court should have imputed $2,000 in income from Mother's teaching supply business based on assumptions made when parties entered into the stipulated agreement that was part of the Judgment. At trial over a year later, Mother testified that she had no income and that she had closed down her online teaching supply business in October 2011. Father, however, argues that a "mini-sting" he orchestrated demonstrates otherwise. Specifically, at trial, Mother testified that she received one order for teaching supplies after October 2011, and that she did not know the purchaser but assumed it was a former customer. Father testified that the purchaser was in fact a new customer and Father knew this because it was someone he asked to make a purchase on Mother's website and who he reimbursed for the purchase. As there was no evidence of other transactions after Mother closed her on-line business, it was not an abuse of discretion for the trial court not to impute income to Mother based on this "mini-sting."

Father also contends that based on Mother's declared monthly expenses, Mother must have income of at least $2,603 per month, presumably under the theory that Mother pays for these expenses from a monthly source of income. Father has presented no case law which would support such a basis for imputing income to Mother. On appeal, Father also seeks to impute income based on the room and board Mother allegedly receives as a part-time nanny. Father does not provide a citation to the record to show that he presented this argument to the trial court or to support the values he attributes to these alleged benefits. Accordingly, we reject this argument.

To the extent Father contends that the trial court's refusal to impute income to Mother demonstrated "bias" against Father, that the court "improperly allowed [Mother's] counsel to ride roughshod over" it, Father has failed to cite to evidence to demonstrate that the court was motivated by improper bias or that it relinquished authority or control of the proceedings.

**B. Father's Income**

Father contends on appeal that the trial court "employ[ed] an incorrect twist of logic" in its March 6, 2012 Decision "to bring monies once held in trust for Appellant's

13

medical needs, into the calculation used to increase child support."[11]  The trial court's decision, however, makes clear that the lump-sum award Father received from his employer was not used in the court's calculation.  Rather, the court declined to "impute additional income to Father" based on either his cash reserves in his personal injury trust or the condominium he purchased with part of those trust funds.[12]

Father also argues on appeal that he testified at "trial that over $500 per month [of his business income] was paid directly for a nonpersonal business loan" and should not have been included in his income.  At trial, Father testified that he had income of $1,542 from disability, $2,300 from workers' compensation and $1,900 or $2,000 from his business,[13] and testified that he used the majority of his income from the business to pay for a variety of bills, including the "credit line for the small business loan which I assumed for the stipulated judgment, the credit card interest, the medical insurance for the kids.  Pays the cell phone, pays other medical bills that aren't covered, which is about $150 a month, and the rest of it's auto, [and] like miscellaneous of $100 a month for other things."  Thus, the cited testimony does not demonstrate that $500 of Father's business income was used to pay business expenditures.  Accordingly, Father has failed to demonstrate that the trial court abused its discretion by not reducing his income by $500.

### C.  Medical Insurance Payments

In calculating child support, the trial court's March 6, 2012 Decision attributed $245 in "health insurance" expenses to Mother.  On appeal, Father contends that this

---

[11] Father also contended that "[a]t no time did [Father] ever suspect that his lump sum personal injury award would be in danger of being levied upon, or the subject of a child support order" and suggests that the court wrongfully imputed income to him based on his personal injury award.

[12] Father apparently acknowledges in his reply brief that the trial court did not impute any income to him.

[13] Father's testimony was substantially consistent with his October 6, 2011 Income and Expense Declaration which listed average monthly income of $1,542 from disability payments, $2,374 from workers' compensation and "$1900 from company."

credit to Mother was incorrect and that Father should have been credited for making these payments. Mother on appeal concedes that this amount is incorrect, but argues that the $245 amount is "diminimus [*sic*] and did not create prejudicial error" and removing the amount would in fact increase Father's child support obligation. In reply, Father argues that correcting the amount would lower his child support obligation.

Because there is no dispute that the inclusion of the $245 health insurance expense for Mother was in error, we remand to the trial court to correct the health insurance expense and re-calculate the child support.

### D. Overpayment of Child Support

Father contends that the trial court erred in not crediting him for $20,000 in alleged overpayments of child support. While Father provided evidence in the form of checks made payable to Mother, the trial court noted that "it is unclear whether Father's alleged payments to Mother, even if they were made, were actually for child support or for some unrelated purpose." Father has not demonstrated that the trial court abused its discretion in concluding that Father failed to establish his claim.

Specifically, Father alleges that the trial court "rebuffed" his attempts to guide the trial court to his 30-pages of documented evidence showing child support payments by responding that the court was "looking through the file" and once the court had the document "simply handed the document" to Mother's counsel, giving the appearance of delegating judicial power to Mother's counsel. The transcript does not support these claims. Rather, the transcript shows that the court was looking through the file attempting to locate the exhibit referred to by Father and, in the context of some confusion identifying the document, allowed Mother's counsel to see the exhibit once located to know to which document Father referred.

Father also alleges that the trial court dismissed the topic "as if it were impertinent." The transcript, however, does not show the court dismissing the topic. Rather the transcript shows that after the exhibit was located, Father's counsel asked Father "what do you have to show the $21,000 past payments?" and Father, instead of testifying about the alleged overpayments, stated, "I don't want to waste the court's time;

15

did the court want me go [*sic*] through my own declaration for that exhibit, or is it sufficient for you?" After the court stated that "[i]t's in the court file. You don't have to repeat what's . . . stated in writing", Father's counsel asked if Father was "basically here to testify that that document speaks for itself?" and Father responded affirmatively. When Father's counsel then asked Father if he had anything to add to the declaration, Father gave an answer that what the court ruled was irrelevant concerning his disability and ability to deal with financial matters and Mother's knowledge of his weaknesses.

### E. Original Judgment

Finally, to the extent Father contends that the increase in child support was "contrary to the original Stipulated Judgment" or that the Judgment was "controlling authority" and therefore the trial court lacked jurisdiction or authority to modify the amounts, this argument is meritless as that the stipulated agreement between parties included in the Judgment states "[c]hild support will be guideline support and maybe [*sic*] modified accordingly" and, irrespective of any agreement between parents, parents cannot abridge a child's right to support or restrict a court's power to act on a child's behalf in support proceedings. (Fam. Code, §§ 3580, 3585, 7632; 1 Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2013) ¶ 6:23, p. 6–30.4.)

In sum, the trial court's calculation of child support is reversed and remanded with respect to the health care expense allocation only and the calculation is affirmed in all other respects.

16

## II. Award of Attorney Fees

The trial court awarded Mother $1,000 in attorney fees based on disparity of income, presumably under Family Code section 2030,[14] and another $4,000 as sanctions under section 271.[15] We review a fee award and sanctions for abuse of discretion. (*In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 652-653; *In re Marriage of Rosen* (2002) 105 Cal.App.4th 808, 829; *In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 178.)

---

[14] Family Code section 2030 provides: "(a)(1) In a proceeding for dissolution of marriage, nullity of marriage, or legal separation of the parties, and in any proceeding subsequent to entry of a related judgment, the court shall ensure that each party has access to legal representation, including access early in the proceedings, to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party, except a governmental entity, to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding.

(2) When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs. A party who lacks the financial ability to hire an attorney may request, as an in pro per litigant, that the court order the other party, if that other party has the financial ability, to pay a reasonable amount to allow the unrepresented party to retain an attorney in a timely manner before proceedings in the matter go forward."

[15] Family Code section 271 provides: "(a) Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award."

17

On appeal, Father contends that the award of attorney fees was contrary to the stipulation between parties in the Judgment. We reject this argument as Father has failed to point to any part of the Judgment that would precluded the trial court from exercising its authority to award attorney fees under statute. Father also argues that because the trial court committed reversible error during the January 27, 2012 hearing, the resulting March 6, 2012 Decision, including the "contrived 'contribution' of attorney fees should be reversed." As discussed above, we affirm the award of child support in all respects except the allocation of health care expense for purposes of calculating child support. Moreover, the trial court awarded $1,000 in attorney fees based on disparity of income and another $4,000 as sanction "against Father for his positions on custody and visitation and his request to modify property provisions of the Judgment, noting that Father withdrew his custody claim without explanation after Mother responded and Father's property modification claims, even if factually true, were "faulty as a matter of law." Father's opening brief, however, does not raise any claims of error related to these trial court findings.

In his reply, Father argues that there was no finding that Father withdrew his OSC on child custody and visitation in bad faith. For Family Code section 271 sanctions, however, conduct need not rise to the level of bad faith or frivolousness. (*In re Marriage of Norton* (1988) 206 Cal.App.3d 53, 58-59.) Father also argues in his reply brief that Mother and her counsel caused additional litigation and "employed various confusing tactics to obfuscate relatively simple issues" and rhetorically asked, "why should [Father] be sanctioned for defending himself against [Mother's] fraudulent conduct?" Father was sanctioned, however, not for his responsive declarations to Mother's various applications and orders to show cause, but for his own orders to show cause that he initiated.

18

Father raises no arguments concerning the statutory basis for the attorney fees award, notice, or the reasonableness of the amounts awarded.[16] We are not required to search the record on our own seeking error. (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.) Accordingly, any such arguments are forfeited and we affirm the award of attorney fees. (See *Beane v. Paulsen* (1993) 21 Cal.App.4th 89, 93, fn. 4 [absence of a cogent argument in opening brief as a species of forfeiture]; *Imagistics Internat., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581, 592, fn. 8 [same]; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 102 [issue in reply brief "too late"], 106 [party must discuss prejudice].)

## III.    Motion for Reconsideration

On appeal, Father argues that the trial court erred when it denied his motion for reconsideration based on a 1099-K tax form he received on February 1, 2012, from Elavon, Inc., a company that processed credit card payments on behalf of RKF Investments. We review the denial of a motion for reconsideration for an abuse of discretion. (*California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 42.)

Even assuming that the 1099-K form was newly discovered evidence related to Mother's on-line teaching store, the document did not establish business income as the amounts of business expenditures for the items being sold is not provided and the form also showed that credit card payments stopped in September 2011, consistent with Mother's testimony that she closed her on-line business in October 2011. Thus, the trial court did not abuse its discretion in denying the motion for reconsideration.

---

[16] Mother's requests for attorney fees on which the trial court relied – Mother's August 9, 2011 Responsive Declaration and her September 26, 2011 Supplemental Response – did not include any declaration concerning the amount of fees incurred or billed for the work and also stated that the fees were sought "for a baseless motion per Family Code 270/271"; while the court awarded $1,000 in fees based on disparity of income, presumably under Family Code section 2030.

19

## IV. Other Contentions

Father claims that Mother has not provided certain documents in discovery but does not indicate whether he has made a motion to compel in the trial court. Father also characterizes as fraudulent a laundry list of arguments made by Mother and her counsel and asks that the March 6, 2012 Decision "be stricken." Father also claims that the trial court treated him with "indifference and disdain." Contentions not raised below or not supported by cogent legal argument or citation of authority are treated as waived.[17] (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 826, 830.)

## DISPOSITION

The matter is remanded to the superior court to reconsider the allocation of medical insurance expense in its calculation of child support. The award of child support is affirmed in all other respects. The trial court's award of attorney fees is affirmed as is its denial of Father's motion for reconsideration.

Mother shall have her costs on appeal.

NOT TO BE PUBLISHED.

CHANEY, J.

We concur:

ROTHSCHILD, Acting P. J.          MILLER, J.[*]

---

[17] At oral argument, Father raised new issues. As a general rule, new issues cannot be raised for the first time at oral argument. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2013) ¶ 10.22, p. 10-6.)

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.