Filed 5/19/15  Boyd v. Freeman CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PAULA BOYD,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>DAVID FREEMAN,<br><br>    Defendant and Respondent. | B253500<br>(Los Angeles County<br>Super. Ct. No. BC486054) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel, Judge.  Affirmed.

Damon L. Hobdy for Plaintiff and Appellant.

The Jamison Law Firm, Guy E. Jamison and Amy Duncan for Defendant and Respondent.

In the underlying action, appellant Paula Boyd sued respondent David Freeman for breach of fiduciary duty and unfair business practices. The trial court sustained Freeman's demurrer to the first amended complaint without leave to amend, concluding that appellants' claims were time-barred and otherwise legally untenable. We affirm.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On June 5, 2012, Boyd filed her original complaint against attorney Freeman for legal malpractice, breach of contract, breach of fiduciary duty, fraud, and declaratory relief.[1] The claims were predicated on allegations that after Boyd hired Freeman to represent her in a matter, he made a "usurious" loan to her secured by a deed of trust for a property in Glendale. According to the complaint, in 2007, after Freeman attempted to arrange for a foreclosure sale of the Glendale property, Boyd and Freeman entered into a "purported" settlement agreement. The complaint asserted that Boyd's claims were for "violations that . . . continued to occur after the settlement," alleging that Freeman "continued to use his legal status and his usurious loan terms to try to take the property illegally and wrongfully from [Boyd]." Attached to the complaint were copies of the deed of trust for the Glendale property and the note secured by that deed.

Freeman demurred to the complaint, contending that Boyd's claims were time-barred under the applicable statutes of limitations. In addition, Freeman argued that the claims failed in light of the complaint's allegations regarding the 2007 settlement, viewed along with the note and trust deed, which Freeman maintained demonstrated the nonusurious nature of the loan. The trial court

---

[1]    The complaint also characterized the request for declaratory relief as a claim for wrongful foreclosure.

2

sustained the demurrer, but afforded Boyd leave to amend her claims, with the exception of her request for declaratory relief.

On March 11, 2013, Boyd filed her first amended complaint (FAC). The complaint asserted a claim for breach of fiduciary duty predicated on allegations that Freeman breached his professional obligations as an attorney in making the secured loan to Boyd, a claim for breach of fiduciary duty predicated on allegations that the loan was usurious, and a claim for restitution under the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.) predicated on violations of the Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.). Freeman demurred to the FAC on the grounds that its claims were untimely under the applicable statutes of limitations, and were otherwise legally untenable. Freeman noted that Boyd's original complaint referred to a 2007 settlement agreement, and requested judicial notice of that agreement.

The trial court sustained the demurrer to the FAC without leave to amend, concluding that it stated no viable claims. In ruling, the court took notice of the original complaint's allegations regarding the existence of the 2007 settlement agreement, but otherwise denied Freeman's request for judicial notice. On October 29, 2013, the court entered an order dismissing Boyd's action. This appeal followed.

## DISCUSSION

Boyd contends the trial court erred in sustaining the demurrer to the FAC without leave to amend. For the reasons discussed below, we disagree.

3

A.  *Standard of Review*

"Because a demurrer both tests the legal sufficiency of the complaint and involves the trial court's discretion, an appellate court employs two separate standards of review on appeal.  [Citation.] . . .  Appellate courts first review the complaint de novo to determine whether or not the . . . complaint alleges facts sufficient to state a cause of action under any legal theory, [citation], or in other words, to determine whether or not the trial court erroneously sustained the demurrer as a matter of law.  [Citation.]" (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879, fn. omitted (*Cantu*).)  Moreover, "[i]f another proper ground for sustaining the demurrer exists, this court will still affirm the demurrer[] even if the trial court relied on an improper ground . . . ." (*Id.* at p. 880, fn. 10.)

"When [so] reviewing a demurrer on appeal, appellate courts generally assume that all facts pleaded in the complaint are true.  [Citation.]" (*Cantu*, *supra*, 4 Cal.App.4th at p. 877, fn. omitted.)  However, "[t]he complaint should be read as containing the judicially noticeable facts, 'even when the pleading contains an express allegation to the contrary.'" (*Id.* at p. 877, quoting *Chavez v. Times-Mirror Co.* (1921) 185 Cal. 20, 23.)

"Second, if a trial court sustains a demurrer without leave to amend, appellate courts determine whether or not the plaintiff could amend the complaint to state a cause of action.  [Citation.]" (*Cantu, supra,* 4 Cal.App.4th at p. 879, fn. 9.)


B.  *Facts*

The FAC alleges the following facts:  Prior to August 2005, Boyd entered into an agreement with Pierre and Kelly Chatelain to purchase an income-producing residential property in Tujunga.  Pursuant to the agreement, she made a $70,000 "good faith deposit" into an escrow.  In mid-2005, the Chatelains declined

4

to complete the sale, refused to return Boyd's deposit, and agreed to sell the Tujunga property to another party.

In an effort to facilitate the purchase of a "surrogate investment," Boyd hired Freeman and directed him to secure her $70,000 deposit. In August 2005, he wrote to the Chatelains requesting that they return the deposit. In addition, Freeman discussed other potential investments with her, including the Alondra Coin Laundry and Market (Alondra Laundry). After assessing alternative investment opportunities, Boyd entered into an agreement to buy the Alondra Laundry.

Boyd's agreement to buy the Alondra Laundry required her to deposit $20,000 into an escrow. When Freeman's initial efforts to secure the return of Boyd's $70,000 deposit failed, he offered to make a "bridge loan" to her to be repaid from that deposit, and advised her to obtain an appraisal of the Glendale property, which she owned. After the appraisal showed that Boyd's equity in the Glendale property was significant, Freeman proposed a $425,000 loan to her, secured by that property.

In offering to make the loan, Freeman did not ensure that its terms were "fair and reasonable," disclose them fully to Boyd, advise her to seek independent advice from another attorney, or obtain her informed written consent to the transaction. Although the pertinent promissory note facially identified the principal sum as $425,000 and the annual interest rate as 10 percent -- the maximum permitted under the California Constitution for specified types of loans -- the effective annual interest rate was 10.22864 per cent because the purported principal sum included fees and costs totaling $9,500.

In December 2005, Boyd executed the note and trust deed regarding the loan. Thereafter, Freeman "received from [Boyd] installment payments on the obligations evidenced in the [n]ote, including the interest component . . . ." Freeman continued to represent Boyd through at least April 27, 2006, when he told

5

her that he might have a conflict that required him to withdraw as her counsel, and that he would take no further action to recover her $70,000 deposit, absent further instructions.

In February 2007, Freeman advised Boyd that her loan payments -- including certain fees -- were past due, and that he would initiate foreclosure proceedings unless she made them. Later, in May 2007, Freeman arranged for the publication of a notice of foreclosure sale. Thereafter, the threatened foreclosure proceedings were terminated "through the assistance of counsel at no cost to [Boyd] . . . ."

In July 2012, Freeman again initiated foreclosure proceedings regarding the Glendale property, which were interrupted by Boyd's intervening bankruptcy proceedings. In November 2012, after the foreclosure sale of the Glendale property, Freeman "dealt with [that] [p]roperty as would an owner . . . while precluding [Boyd] from receiving . . . rental income" from it.

### C. *Claims for Breach of Fiduciary Duty*

We begin by examining the claims for breach of fiduciary duty in the FAC, which are predicated on Freeman's attorney-client relationship with Boyd. As explained below, we conclude that the claims, as pleaded, are time-barred under Code of Civil Procedure section 340.6, which constitutes the statute of limitations for legal malpractice claims.[2]

---

[2] All further statutory citations are to the Code of Civil Procedure, unless otherwise indicated.

6

### 1. *Breach of Fiduciary Duty By An Attorney*

In actions against attorneys, the elements of a cause of action for breach of fiduciary duty are: "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach. [Citation.] [¶] The scope of an attorney's fiduciary duty may be determined as a matter of law based on the Rules of Professional Conduct which, 'together with statutes and general principles relating to other fiduciary relationships, all help define . . . the fiduciary duty which an attorney owes to his [or her] client.' [Citations.]" (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086-1087.)

The FAC contains two claims for breach of fiduciary duty against Freeman, each of which arises from his loan to Boyd. The first claim asserts that Freeman, in making the December 2005 loan, failed to comply with rule 3-300 of the California Rules of Professional Conduct (rule 3-300), which bars attorneys from acquiring a financial interest adverse to a client without (1) ensuring that the transaction is fair and reasonable and (2) securing the client's written consent, after disclosing the transaction's terms and affording the client a full opportunity to obtain independent legal advice.[3] The second claim asserts that Freeman, in

---

[3] Rule 3-300 states: "A member shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied: [¶] (A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and [¶] (B) The client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and [¶] (C) The client thereafter consents in writing to the terms of the transaction or the terms of the acquisition."

making a loan to a client, was obliged to comply with the usury limitations set forth in the California Constitution, but failed to do so.**4**

2. *Section 340.6*

Generally, section 340.6 sets forth the limitations periods applicable to claims for legal malpractice and breach of fiduciary duty arising out of the performance of an attorney's professional duties. (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1121 (*Prakashpalan*); *Quintilliani v. Mannerino* (1998) 62 Cal.App.4th 54, 67-68 (*Quintilliani*).) Subdivision (a) of section 340.6 states in pertinent part: "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first."

Subdivision (a) of section 340.6 states "'two distinct and alternative limitation periods: *one* year after actual or constructive *discovery,* or *four* years after *occurrence* (the date of the wrongful act or omission), whichever occurs first.'" (*Samuels v. Mix* (1999) 22 Cal.4th 1, 7 (*Samuels*), quoting *Radovich v. Locke-Paddon* (1995) 35 Cal.App.4th 946, 966.) That subdivision also

---

**4**     Generally, "[t]he California Constitution sets a maximum annual interest rate of seven percent on loans and forbearances, but allows parties by written contract to set the interest rate at up to 10 percent, or at the level of the Federal Reserve's discount rate plus 5 percent, on loans or forebearances involving real property. (Cal. Const., art. XV, § 1, subds. (1)-(2).)" (*Jones v. Wells Fargo Bank* (2003) 112 Cal.App.4th 1527, 1534-1535.) In some circumstances, commissions or similar payments relating to a loan may constitute additional interest for the purposes of assessing whether the loan is usurious. (*Bayne v. Jolley* (1964) 227 Cal.App.2d 630, 633.)

incorporates tolling provisions, stating: "'[I]n no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury. [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred. [¶] (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation. [¶] (4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action.'" With the exception of subdivision (a)(3), the tolling provisions apply to both the one-year and four-year limitations periods. (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 126; *Gurkewitz v. Haberman* (1982) 137 Cal.App.3d 328, 334-336.)

In sustaining the demurrer to the breach of fiduciary duty claims, the trial court ruled that the claim based on violations of rule 3-300 was time-barred under section 340.6, and that the usury-related claim was time-barred under section 343, the so-called "'catch-all'" statute setting forth a four-year limitations period for claims subject to no other statute (see *William L. Lyon & Associate, Inc. v. Superior Court* (2012) 204 Cal.App.4th 1294, 1312).[5] Nonetheless, we may affirm the sustaining of the demurrer on a ground not relied upon by the trial court, regardless of whether it was raised in the demurrer, provided that the parties have an adequate opportunity to address it. (*Brunius v. Parrish* (2005) 132 Cal.App.4th 838, 849-850; *B & P Development Corp. v. City of Saratoga* (1986) 185

---

[5]    As the result of an apparent typographical error traceable to Freeman's demurrer, the court's order misidentified the catch-all statute as section 338.

9

Cal.App.3d 949, 959.)  Here, Boyd acknowledges that Freeman's demurrer contended that both claims were time-barred under section 340.6.

In our view, section 340.6 is applicable to both claims for breach of fiduciary duty in the FAC, even though one of those claims alleges that Freeman made a usurious loan to Boyd.  Generally, the application of section 340.6 to a claim against an attorney hinges on its "'gravamen'" and "'the nature of the right sued on . . . .'" (*Quintilliani*, *supra*, 62 Cal.App.4th at p. 66, quoting *Davis & Cox v. Summa Corp.* (9th Cir. 1985) 751 F.2d 1507, 1520.)  Thus, as explained in *Quintilliani*, when a claim asserts that an attorney breached his or her fiduciary duties *as an attorney* by engaging in improper "nonattorney" activities while providing legal services, it is subject to section 340.6.  (62 Cal.App.4th at pp. 67-69.)

In *Quintilliani*, a partnership hired a lawyer to provide legal representation and administrative consulting services.  (*Quintilliani*, *supra*, 62 Cal.App.4th at p. 57.)  Later, the partnership sued the lawyer, asserting separate claims for legal malpractice and negligent consultant services, as well as a claim for breach of fiduciary duty predicated on the misconduct underlying the other claims.  (*Id*. at pp. 60-61.)  After a demurrer was sustained to the complaint without leave to amend, the appellate court determined that although the claim for legal malpractice was time-barred under section 340.6, that statute was inapplicable to the claim for negligent consultant services, as it concerned "nonattorney" misconduct. (*Quintilliani*, *supra*, at pp. 63-67.)  Nonetheless, the court held that the claim for breach of fiduciary duty was time-barred under section 340.6, notwithstanding the claim's references to "nonattorney" misconduct, because the underlying fiduciary duty arose exclusively from the attorney-client relationship.  (*Quintilliani*, *supra*, at pp. 67-69.)

10

The rationale in *Quintilliani* is applicable here. Both claims for breach of fiduciary duty predicate the existence of such a duty solely on Freeman's attorney-client relationship with Boyd; in addition, the allegations of attorney and nonattorney misconduct are intertwined, as the only feature of Freeman's loan identified in the FAC as potentially not "fair and reasonable" under rule 3-300 is its alleged usurious character. Both claims are thus subject to section 340.6.

Relying on *David Welch Co. v. Erskine & Tully* (1988) 203 Cal.App.3d 884 (*David Welch*), Boyd maintains that neither claim is subject to section 340.6. There, a collection agency sued its former law firm for breach of fiduciary duty, alleging that the firm improperly acquired its business activities using confidential information obtained during the attorney-client relationship, in violation of the California Rules of Professional Conduct. (*David Welch, supra,* 203 Cal.App.3d at pp. 888-892.) After the client secured a judgment in its favor, the appellate court rejected a contention that the agency's claim for breach of fiduciary duty was at least partially time-barred under section 340.6, concluding that the claim was subject to the four-year limitations period set forth in section 343 -- the so-called "catch-all statute" -- rather than the one-year limitations period set forth in section 340.6. (*David Welch, supra,* at p. 893.)

Four years later, in *Stoll v. Superior Court* (1992) 9 Cal.App.4th 1362, 1363-1367, the appellate court rejected the reasoning of *David Welch* and held that section 340.6 is the applicable statute of limitations in any action against an attorney on a claim for legal malpractice or breach of fiduciary duty, other than for actual fraud. The *Stoll* court concluded that excluding breach of fiduciary duty claims based on an attorney-client relationship from the scope of section 340.6 "disregards the intent of the Legislature," namely, "to enact a comprehensive, more restrictive statute of limitations for practicing attorneys facing malpractice claims." Subsequently, appellate courts have followed *Stoll*, rather that *David Welch.* (E.g.,

11

*Prakashpalan, supra*, 223 Cal.App.4th at p. 1121 [section 340.6 "applies to an action for malpractice as well as breach of fiduciary duty arising out of the performance of an attorney's professional duties"]; *Quintilliani*, *supra*, 62 Cal.App.4th at pp. 67-68 [discussing cases, rejecting *David Welch* and following *Stoll*].)  As we find *Stoll* persuasive, we apply section 340.6 to Boyd's claims for breach of fiduciary duty.

### 3. *Analysis*

As explained below, each claim for breach of fiduciary duty in the FAC is time-barred under both limitations periods specified in section 340.6.  At the threshold (see pt. C.3.a., *post*), we conclude that the timeliness of those claims is properly assessed in light of the 2007 settlement agreement, which is alleged in the original complaint but omitted from the FAC.  As further explained below (see pts. C.3.b. & A.3.c., *post*), the 2007 settlement agreement, coupled with the FAC's allegations that Boyd was represented by counsel when the 2007 foreclosure sale was averted, establish that her claims accrued no later than the execution of the 2007 settlement agreement, for purposes of the one-year and four-year limitations periods.  Boyd's claims are thus untimely because she commenced the underlying action in June 2012, over four years after her claims accrued.

### a. *Omitted Allegations Regarding 2007 Settlement*

To begin, we observe that the trial court, in sustaining Freeman's demurrer to the FAC, properly took notice of the original complaint's allegations regarding the 2007 settlement, which are not found in the FAC.[6]  Generally, a party may not

---

[6]    The court otherwise denied Freeman's request for judicial notice of the 2007 settlement agreement, the terms of which are not described in the original complaint.  It is
*(Fn. continued on next page.)*

12

amend a complaint by omitting allegations fatal to its claims without offering an adequate explanation for the omission. (*Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 835 (*Reichert*).)[7] Thus, when a complaint alleges precisely when a contract was executed, the plaintiff cannot avoid a demurrer to a contract-based claim predicated on the statute of limitations merely by amending the complaint to describe the contract's execution date in less precise terms. (*Kenworthy v. Brown* (1967) 248 Cal.App.2d 298, 302-303.) In such cases, a court "may examine the prior complaint to ascertain whether the amended complaint is merely a sham." (*Id*. at p. 302.)

Here, the original complaint alleged that in 2007, Boyd entered into a settlement agreement with Freeman "which covered the foreclosure and the note on the [Glendale] property." Pointing to that allegation, Freeman's demurrer to the original complaint contended that Boyd's legal malpractice claim -- which relied in part on allegations regarding his 2005 "usurious" loan -- was time-barred under section 340.6. In sustaining that demurrer with leave to amend, the trial court ruled that the complaint's allegations regarding Freeman's misconduct were too unclear to permit a determination whether the legal malpractice claim was untimely. Following that ruling, Boyd submitted the FAC, which details Freeman's alleged misconduct and the manner in which his loan was purportedly usurious, but omits any reference to the settlement agreement, aside from asserting that the 2007 foreclosure proceedings "were terminated through the assistance of counsel at no

unnecessary for us to examine that ruling, as the demurrer was properly sustained without reference to the settlement's terms.

[7]     Although the principle stated above is ordinarily applied to verified complaints, it also encompasses facts omitted from an unverified complaint that are "peculiarly within [the plaintiff's] own knowledge." (*Reichert*, *supra*, 68 Cal.2d at p. 836.) The principle is thus applicable here, as Boyd's original unverified complaint alleged that she entered into the 2007 settlement agreement.

cost to [Boyd]." Accordingly, the trial court properly assessed Freeman's demurrer to the FAC in light of the allegations in the original complaint regarding the 2007 settlement agreement. For that reason, we also consider those allegations in our analysis.

### b. *One-Year Limitations Period*

We turn to the timeliness of the breach of fiduciary duty claims in the FAC under the one-year limitations period. For purposes of that period, a cause of action accrues only when "'the client discovers or should discover the facts essential to the malpractice claim . . . .'" (*Samuels*, *supra*, 22 Cal.4th at p. 11, quoting *Laird v. Blacker* (1992) 2 Cal.4th 606, 611.) The applicable test is "whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his or her investigation." (*McGee v. Weinberg* (1979) 97 Cal.App.3d 798, 803; accord, *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 685.) Under that test, "'[a] plaintiff need not be aware of the specific "facts" necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.'" (*Peregrine Funding*, *supra*, 133 Cal.App.4th at p. 685, quoting *Jolly v. Eli Lilly & Co.*(1988) 44 Cal.3d 1103, 1111.)

The first tolling provision also plays a crucial role in triggering the one-year period. As our Supreme Court has explained, "[t]he legislative scheme . . . toll[s] the limitations period if the plaintiff has not sustained any actual injury. [Citation.] As a result, a plaintiff who actually or constructively discovered the attorney's

14

error, but who has suffered no damage to support a legal malpractice cause of action, need not file suit . . . ." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 757-758 (*Jordache*).) However, under the first tolling provision, "*discovery* of damage is not a necessary component of actual injury . . . ." (*Id*. at p. 762.)

Here, the allegations in the FAC, coupled with the allegations regarding the 2007 settlement agreement in the original complaint, establish that no later than the end of 2007, Boyd knew, or should have known, the facts underlying both breach of fiduciary duty claims. The key facts underlying each claim were available to Boyd in December 2005, when she executed the note and trust deed regarding the loan. At that time, while engaged in providing legal services to Boyd, Freeman purportedly made the usurious loan without advising her to obtain independent legal advice regarding it or securing her fully informed written consent. In 2007, Freeman's initiation of foreclosure proceedings necessarily gave Boyd grounds to scrutinize the loan, and she then had independent legal representation, as she averted the foreclosure sale with "the assistance of counsel." On appeal, Boyd does not dispute that her counsel's duty was to oppose the foreclosure proceedings, as her opening brief states that when Freeman noticed the foreclosure sale in 2007, she "secured new counsel." Accordingly, she must be charged with constructive knowledge of her claims no later than the execution of the 2007 settlement agreement.

The allegations in the FAC also establish that Boyd incurred actual injury well before she executed the 2007 settlement agreement. Generally, "[t]he test for actual injury . . . is whether the plaintiff has sustained any damages compensable in an action, other than one for actual fraud, against an attorney for a wrongful act or omission arising from the performance of professional services." (*Jordache*, *supra*, 18 Cal.4th at p. 751.) Under the usury laws, a loan is usurious at its

15

inception (*Sharp v. Mortgage Security Corp.* (1932) 215 Cal. 287, 290; *Strike v. Trans-West Discount Corp.* (1979) 92 Cal.App.3d 735, 745); furthermore, a borrower who pays interest at a usurious rate may recover the usurious interest, and in some circumstances, "treble the amount paid" (*Creative Ventures, LLC v. Jim Ward & Associates* (2011) 195 Cal.App.4th 1430, 1441).  Here, the FAC alleges that before Freeman initiated foreclosure proceedings in 2007, he "received from [Boyd] installment payments on the obligations evidenced in the [n]ote, including the interest component thereof amounting to interest accruing at the [usurious] rate . . . ."  The trial court thus correctly determined that Boyd suffered actual injury when she made those installment payments.

No other tolling provision applicable to the one-year limitations period operated to toll the accrual of the claims after the execution of the 2007 settlement agreement.  The FAC contains no suggestion that Boyd suffered from a disability, for purposes of the fourth tolling provision.  Furthermore, under the second tolling provision, accrual is delayed by a continuing attorney-client relationship, that is, an "ongoing *mutual* relationship and . . . activities in furtherance of the relationship." (*Worthington v. Rusconi* (1994) 29 Cal.App.4th 1488, 1498.)  Under that standard, the attorney's formal withdrawal is not required to show that the relationship has terminated when the facts establish its "irreparable breakdown."  (*Shapero v. Fliegel* (1987) 191 Cal.App.3d 842, 847, fn. 6.)  Here, the FAC alleges that Freeman told Boyd in April 2006 that a conflict might require him to withdraw as her counsel, and that he would take no further action to recover her $70,000 deposit absent further instructions; he thereafter initiated foreclosure proceedings that she forestalled with "the assistance of counsel."  Indeed, as noted above, she acknowledges having secured new counsel to resolve the foreclosure proceedings. Those allegations establish that Boyd's attorney-client relationship with Freeman ended before she executed the 2007 settlement agreement.

16

Boyd maintains that she lacked constructive knowledge of her claims in 2007 because she is an "unsophisticated person," and Freeman was then acting as her attorney. However, that contention fails in light of the FAC's allegations and her admissions on appeal. Generally, under the discovery rule applicable to the one-year limitations period, "'"[i]t is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action."'" (*Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26, 42-45, quoting *Worton v. Worton* (1991) 234 Cal.App.3d 1638, 1650.) As discussed above, in 2007 the facts underlying Boyd's claims were available to her, and she was assisted by new counsel in her effort to avert the foreclosure sale.

In sum, the breach of fiduciary duty claims in the FAC thus accrued no later than the execution of the 2007 settlement agreement, for purposes of the one-year limitations period. As Boyd commenced her action in June 2012, over four years later, those claims are time-barred.[8]

---

[8] We note that Boyd's claims would be untimely under the alternative four-year limitations period set forth in section 340.6, were that period applicable. Because the four-year limitations period ordinarily begins with the occurrence of the facts underlying the claims, rather than with the plaintiff's actual or constructive discovery of those facts, the key issue is whether any of the tolling provisions delayed the triggering of that period. As explained above (see pt. C.3.b., *ante*), the first, second, and fourth tolling provisions did not operate to delay the accrual of Boyd's claims after the execution of the 2007 settlement agreement. Furthermore, no additional delay arose under the third tolling provision, notwithstanding the allegation in the FAC that Freeman made improper -- but unspecified -- "representations and assurances regarding the nature and effectiveness" of the loan (see pt. D., *post*). For the reasons that we have discussed (see pt. C.3.b., *ante*), the facts material to Boyd's claims were available to her when she executed the loan in December 2005, and any attempt by Freeman to conceal those facts necessarily would have been dispelled in 2007, when Boyd secured new counsel to oppose Freeman's foreclosure proceedings. Accordingly, the claims are also untimely under the four-year limitations period.

D. *UCL Claim*

In sustaining the demurrer to the FAC, the trial court concluded the FAC stated no tenable claim under the UCL and was time-barred. We agree.

"The UCL defines 'unfair competition' as 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.' [Citation.] By proscribing 'any unlawful' business act or practice [citation], the UCL '"borrows"' rules set out in other laws and makes violations of those rules independently actionable. [Citation.] However, a practice may violate the UCL even if it is not prohibited by another statute. Unfair and fraudulent practices are alternate grounds for relief." (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370.) Under the UCL, damages cannot be recovered, and plaintiffs are generally limited to injunctive relief and restitution. (*Clark v. Superior Court* (2010) 50 Cal.4th 605, 610.)

Here, Boyd's claim for restitution relies on "unlawful" business practices, namely, Freeman's purported violations of the CLRA. Generally, the CLRA proscribes enumerated practices in connection with consumer transactions, including representing that goods or services "have . . . uses, benefits, or quantities which they do not have," or that they "are of a particular standard, quality, or grade . . . ." (Civ. Code, § 1770, subds. (a)(5), (a)(7).) Under the CLRA, the term "goods" means "tangible chattels bought . . . primarily for personal, family, or household purposes," the term "services" means "services furnished in connection with the sale or repair of goods," and the term "[t]ransaction" means "an agreement between a consumer and another person, . . . , and includes the making of, and the performance pursuant to, that agreement." (Civ. Code, § 1761, subds. (a), (b), (e).)

The FAC alleges that Freeman violated the CLRA by making improper "representations and assurances" of the type specified above regarding Freeman's

18

December 2005 loan to Boyd.[9]  In an apparent effort to establish that the loan potentially fell within the scope of the CLRA, the FAC stated that Boyd sought to buy the Alondra Laundry "[t]o provide the steady and reliable cash flow essential for discharge of her personal, moral and household duties while providing necessitated daily care for her disabled husband and newborn child, as a surrogate for the substantial income she previously earned from the professional employment she previously could and did enjoy before events compelled her to give up that gainful employment to care for her family's on-going health and other household needs."

The trial court correctly concluded that the FAC stated no UCL claim predicated on the CLRA.  Generally, a UCL claim alleging an unlawful business practice fails when no violation of an underlying law is shown.  (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 610.)  The CLRA is inapplicable to loans or extensions of credit not tied to a specific purchase of a "good" or "service," within the meaning of the CLRA.  (*Berry v. American Express Publishing, Inc.* (2007) 147 Cal.App.4th 224, 228-233.)  Under the CLRA, the definitions of those terms exclude loans for the purchase of real estate.  (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1488.)  The UCL claim is thus fatally defective, to the extent it relies upon the CLRA.

Before the trial court and on appeal, Boyd has argued that the FAC adequately states a UCL claim predicated on unfair or fraudulent business practices, pointing to FAC's allegations regarding Freeman's purported breaches of fiduciary duty.  However, any such claim is time-barred under section 17208 of

---

[9]     Although the FAC asserts that the representations and assurances concerned "the December 2009 transaction," the FAC's apparent intent is to refer to the December 2005 loan, as it contains no other allegation regarding a transaction in December 2009.

19

the Business and Professions Code, which states that an action to assert a cause of action under the UCL must be commenced "within four years after the cause of action accrued." As our Supreme Court has explained, because the UCL is a "chameleon" statute affording relief for a broad variety of misconduct, "'the nature of the right sued upon'" and "circumstances attending its invocation control the point of accrual." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1196, quoting *Jefferson v. J.E. French Co.* (1960) 54 Cal.2d 717, 718.) A UCL claim predicated on an attorney's breach of his or her fiduciary duty is thus properly subject to the accrual principles set forth in section 340.6. For the reasons discussed above (see pt. C.3, *ante*), under those principles, Boyd's UCL claim accrued no later than the execution of the 2007 settlement agreement. Because Boyd's action was filed more than four years later, the UCL claim is time-barred.[10]

### E. *Leave to Amend*

The remaining question is whether the trial court properly sustained the demurrer without leave to amend. Generally, "[t]he burden of showing that a reasonable possibility exists that amendment can cure the defects remains with the plaintiff; neither the trial court nor this court will rewrite a complaint. [Citation.] Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no

---

[10]     We recognize that the trial court concluded that any UCL claim founded on a breach of fiduciary duty was untimely under section 338, subdivision (a), which sets forth a three-year limitations period for "[a]n action upon a liability created by statute, other than a penalty or forfeiture." However, as noted above (see pt. C.2, *ante*), we may affirm the trial court's ruling on a ground first raised on appeal, provided that the parties have an adequate opportunity to address it. That requirement is satisfied here, as Freeman's brief on appeal identifies Business and Professions Code section 17208 as the appropriate limitations statute.

20

basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend. [Citations.]" (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 44 (*Rakestraw*).) Although Boyd requested leave to amend before the trial court, she offered no specific amendments to the FAC.

On appeal, Boyd proposes various amendments. To secure leave to amend on appeal, Boyd "'must show in what manner [s]he can amend h[er] complaint and how that amendment will change the legal effect of h[er] pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden. [Citation.] [Boyd] must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, [Boyd] must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary. [Citation.]" (*Rakestraw*, *supra*, 81 Cal.App.4th at pp. 43-44.) As explained below, Boyd has failed to make the requisite showing.

Boyd's principal proposals rely on the "continuing violation" doctrine, which in suitable circumstances effectively extends the limitations period for a claim otherwise time-barred. (*Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 343.) The doctrine "permits recovery 'for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct within the limitations period[.]'" (*Ibid.*) Under the doctrine, when "'the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts,'" the suit is timely if filed within the limitations period applicable to "''"the most recent [violation]" [citation], and the entire course of conduct is at issue.' [Citation.]" (*Ibid.*, quoting *Joseph v. J. J. Mac Intyre Companies, L.L.C.* (N.D. Cal. 2003) 281 F.Supp.2d 1156, 1161.)

21

As explained in *Vaca v. Wachovia Mortgage Corp.* (2011) 198 Cal.App.4th 737, 745, the doctrine is inapplicable to "continuing injury from a completed act." There, the operative complaint asserted claims for fraud and breach of fiduciary duty against a bank, alleging that it made improper loans at "an artificially inflated interest rate" secured by plaintiff's real property. (*Id*. at pp. 740-741.) In sustaining a demurrer to the complaint without leave to amend, the trial court concluded that the claims were time-barred. (*Id*. at p. 743.) On appeal, the plaintiff relied on the continuing violation doctrine, arguing that foreclosure sales of the real property and other purported "continuing wrongs" operated to extend the limitations period. (*Id*. at pp. 744-745.) In rejecting that contention, the appellate court determined that the complaint's allegations showed merely that the plaintiff continued to suffer from the fraudulent loans. (*Ibid*.) The court stated: "[I]f continuing injury from a completed act generally extended the limitations periods, those periods would lack meaning. Parties could file suit at any time, as long as their injuries persisted. This is not the law. The time bar starts running when the plaintiff first learns of actionable injury [citation], even if the injury will linger or compound." (*Id.* at p. 745.)

Here, Boyd invokes the continuing violation doctrine, arguing that she can allege certain claims -- namely, for wrongful foreclosure, conversion, and money had and received -- predicated on Freeman's conduct relating to the 2012 foreclosure sale, which she maintains is continuous with his misconduct from 2005 through 2007. However, although she refers broadly to "irregularities in the . . . sale" and inadequacy of the sale price, she offers no allegations detailing the purported misconduct, and no legal authority showing that any such misconduct supports the proposed claims or is properly viewed as part of a "continuing pattern" encompassing Freeman's alleged breaches of fiduciary duty, for purposes

of the continuing violation doctrine. She has thus failed to demonstrate that the proposed claims are viable and that the doctrine applies.

Boyd also contends that her proposed claims are timely under the so-called "theory of continuous accrual" (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 822). That theory is applicable when "there is a continuing wrong . . . with periodic new injury to the plaintiff," for example, when "performance of contractual obligations is severable into intervals, as in installment contracts . . . ." (*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.* (2004) 116 Cal.App.4th 1375, 1388.) In such cases, the running of the limitations period with respect to nonperformance in an interval does not preclude a claim regarding nonperformance in a later interval, provided that claim is brought within the limitations period associated with the later interval. (*Ibid.*) In contrast to the continuing violation doctrine, the theory of continuous accrual does *not* operate to extend the limitations period. Rather, under the theory, "an action attacking the performance for any particular interval must be brought *within the period of limitations* after the particular performance was due." (*Armstrong Petroleum Corp., supra,* 116 Cal.App.4th at p. 1388, italics added.)

Boyd's contention under the theory of continuous accrual fails for the reasons discussed above. She offers no specific allegations regarding Freeman's purported misconduct in 2012, and no legal authority showing that any such misconduct is subject to the theory.[11]

---

[11] In an apparent effort to cure the defects in contentions discussed above, Boyd has requested that we take judicial notice of a ruling on Freeman's demurrer to a complaint filed by her mother, Harley Wyatt, in an action involving the 2012 foreclosure sale of the Glendale property (*Wyatt v. Freeman,* L.A.S.C. case No. BC514905). Although we have granted that request, we conclude that Boyd has established no basis for leave to amend.

*(Fn. continued on next page.)*

In a related contention, Boyd maintains that she should be permitted to amend the FAC to specify the date of her final payment of usurious interest, arguing that under the continuing violation doctrine or the theory of continuous accrual, her claims for breach of fiduciary duty accrued no earlier than that final payment. This contention, however, is also subject to the defects identified above: she offers no specific amendment potentially establishing that her breach of fiduciary duty claims accrued after the 2007 settlement agreement, for purposes of the one-year and four-year limitations periods set forth in section 340.6, and no legal authority that the continuing violation doctrine or the theory of continuous accrual would, in fact, toll the accrual of those claims.

Boyd also contends that she should be permitted to amend the FAC to plead that the claims are subject to "equitable tolling" of the limitations periods, and that Freeman is estopped on equitable grounds from asserting that the claims are time-barred. She argues that she trusted Freeman when he made the loan to her, as he was then her lawyer, and that Freeman would suffer no prejudice if she were

---

Boyd has forfeited her contention predicated on Wyatt's complaint, as she failed to raise it in her opening brief. (*Horowitz v. Noble* (1978) 79 Cal.App.3d 120, 138-139; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, pp. 769-771.) However, we would reject the contention were we to address it. The ruling discloses that Wyatt has asserted several viable claims against Freeman -- including a claim for wrongful foreclosure -- predicated on allegations that he gave her insufficient notice of the 2012 foreclosure sale of the Glendale property, in which she purportedly owned a five percent interest. Relying on that ruling, Boyd states in her reply brief that her action and Wyatt's action "are based in large part on the same operative facts." Absent from the reply brief, however, is any description of the specific facts that Boyd would allege if granted leave to amend the FAC, and any argument -- with citation to legal authority -- that the facts alleged in Wyatt's complaint support viable claims by Boyd.

On a related matter, following the completion of briefing, we granted Freeman's request that we take judicial notice of the summary judgment in his favor in Harley Wyatt's action regarding the Glendale property. For the reasons discussed above, the summary judgment is not pertinent to our resolution of the issues presented in this appeal.

24

permitted to litigate her claims against him. We discern no basis for applying equitable tolling or equitable estoppel here.

Generally, equitable tolling and equitable estoppel are distinct doctrines. (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 383 (*Lantzy*).) Equitable tolling, which "extend[s] a statute of limitations as necessary to ensure fundamental practicality and fairness," is applied "in carefully considered situations to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice." (*Id*. at p. 370.) "'"Equitable estoppel, however, . . . comes into play only after the limitations period has run and addresses . . . the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period. [Equitable estoppel] is wholly independent of the limitations period itself and takes its life . . . from the equitable principle that no man [may] profit from his own wrongdoing in a court of justice."'" (*Id*. at p. 383, quoting *Battuello v. Batuello* (1998) 64 Cal.App.4th 842, 847-848.)

Here, the allegations in the FAC foreclose the existence of an "unjust technical forfeiture" of Boyd's claims or conduct by Freeman that "'"induced [her] into forbearing suit within the applicable limitations period"'" (*Lantzy, supra*, 31 Cal.4th at pp. 370, 383). As explained above (see pts. C.3.b. and D.), Boyd's claims accrued no later than the execution of the 2007 settlement agreement, when Boyd averted the 2007 foreclosure sale. At that time, the facts underlying her claims were available to her, she was assisted by counsel, and her attorney-client relationship with Freeman had effectively been terminated. Nothing in the FAC otherwise suggests that Freeman engaged in conduct that prevented Boyd from asserting her claims in a timely manner, and Boyd identifies none on appeal. Accordingly, Boyd has demonstrated no basis for leave to amend the FAC to plead

equitable tolling or equitable estoppel.  In sum, the trial court properly sustained Freeman's demurrer to the FAC without leave to amend.

/ / /

/ / /

/ / /

**DISPOSITION**

The order of dismissal is affirmed.  Freeman is awarded his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:



WILLHITE, Acting P. J.



COLLINS, J.


27